UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

JANE DOE,

Plaintiff,

-against-

PRIMERO REORGANIZED
SCHOOL DISTRICT RE-2,
BOARD OF EDUCATION OF THE
PRIMERO SCHOOL DISTRICT,
WILLIAM NACCARATO, Individually and
In His Official Capacity as agent of the
Primero reorganized School District RE-2,
TRISH SANCHEZ, Individually and in Her
Official Capacity As agent of the Primero
Reorganized School District RE-2, DARIUS
LOPEZ, ZANDER LAMORIE, and DEBRA
VELASQUEZ

Defendants.

---

PLAINTIFF'S MOTION FOR LEAVE TO RESTRICT ACCESS
PURSUANT TO D.C. Colo. L. R 7.2

---

Plaintiff Jane Doe, ("Plaintiff") by her attorneys, Nesenoff & Miltenberg, LLP and

Campbell, Killin, Britain, and Ray LLC, and pursuant to D.C. Colo. L. Civ. R. 7.2, hereby seeks

authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff,

restricting access of the true identity of Plaintiff to the Court and parties.  Plaintiff requests a

Level 1 restriction. In light of the serious nature of the allegations contained in the Complaint, a

copy of which is attached, as **Exhibit "A"**, Plaintiff should be permitted to proceed in this action

as a "Jane Doe" plaintiff.

Plaintiff is justifiably concerned about the possibility of acts of reprisal that could further prevent Plaintiff from proceeding with her college and future endeavors, and inflict further severe academic, financial and/or mental and emotional harm. Plaintiff's identity, as described in the Complaint, should not be made available to the general public due to the highly personal, sexually explicit and confidential nature of the allegations in said Complaint, and due to her status as a minor at the time of the events described in the Complaint. Plaintiff further informs the Court that she anticipates moving for a Protective Order at a later date requesting that Defendants be prohibited from ever disclosing the true identify of Plaintiff.

## STATEMENT OF FACTS

### Plaintiff Is Repeatedly Sexually Assaulted

In or around July of 2017, Plaintiff, then sixteen (16) years old, was enrolled as a student at Trinidad High School in Trinidad, Colorado. Prior to enrolling in Trinidad High School, Plaintiff had been enrolled in the defendant Primero Reorganized School District RE-2 ("Primero" or the "School").

Since an early age, Plaintiff had been acquainted with two Primero students, defendant Darius Lopez ("Defendant Lopez") and defendant Zander Lamorie ("Defendant Lamorie" and together with Defendant Lopez the "Assaulting Defendants").

On or about the evening of July 7 and early morning of July 8, 2017, following volleyball practice, Plaintiff left to go to a party at defendant Debra Velasquez's ("Defendant Velasquez") home in Weston, Colorado. Prior to the house party, Plaintiff and a group of friends, including the Assaulting Defendants, decided to stop at a nearby river. While at the river, Plaintiff drank alcohol and smoked marijuana. Although Plaintiff had previously smoked marijuana, she did not have much experience with either alcohol or marijuana, and had never mixed the two substances.

At approximately 9 or 10 p.m., the group left the river and headed back to Defendant Velasquez's house. The adults present at the house at the time the group arrived, and throughout the remainder of the night, included Defendant Velasquez and defendant Trish Sanchez ("Defendant Sanchez"). Upon information and belief, Defendant Velasquez and Defendant Sanchez were aware that everyone in the group of students was below the legal drinking age and knowingly permitted the minors to consume alcohol and illegal substances while at and within Defendant Velasquez's home.

While at Defendant Velasquez's house, Plaintiff and the other children socialized outside around a firepit. Plaintiff continued to drink alcohol, an estimated eight (8) beers, and smoked more marijuana from a joint. Throughout the night, the Assaulting Defendants continued to taunt Plaintiff by tapping their laps to get her to sit on them and at one point, Defendant Lopez forcibly placed Plaintiff on his lap. At that point, the group went inside the home, leaving Plaintiff and the Assaulting Defendants alone by the outside firepit.

While left outside by the firepit with the Assaulting Defendants, Plaintiff began to strongly feel the effects of the alcohol and marijuana she had consumed. Plaintiff began to feel extremely light-headed and tired, had severe difficulty staying awake while outside, and suffered from blurred vision.; she did not feel like herself and lost control of her surroundings. Plaintiff was unable to support herself or walk freely and had to rely on Defendant Lopez to escort and navigate her around her environment. At some point, Defendant Lopez put out the fire in the firepit and escorted Plaintiff into the house. Defendant Lamorie followed.

Plaintiff recalls being led through the home where the other members of the group of students and Defendants Velasquez and Sanchez were present. Defendant Lopez brought Plaintiff to a bedroom inside the household. Defendant Lamorie followed them inside.

When Plaintiff reached the foot of the bed, Plaintiff crawled into the bed still fully clothed. Plaintiff was wearing a long sleeve pull-over t-shirt, sports bra, underwear, and volleyball sweatpants. Once Plaintiff got into the bed, the Assaulting Defendants entered the bed, one on either side of Plaintiff leaving, little space between their bodies. At that time, Defendant Lopez, Defendant Lamorie and Plaintiff were all fully clothed. Thereafter, Plaintiff lost consciousness.

Plaintiff eventually came to after some time to discover Defendant Lopez and Defendant Lamorie working in tandem to remove her clothing, with each boy pulling down different sides of Plaintiff's pants. Plaintiff noticed that while Defendant Lamorie was still clothed, Defendant Lopez had removed all of his clothing and was in the bed naked. Plaintiff tried to grab at her pants to bring them back up and get away from the Assaulting Defendants. However, realizing that Plaintiff had awoken, Defendant Lopez got on top of Plaintiff, forced open her mouth, and orally raped Plaintiff.

While Defendant Lopez forced Plaintiff to perform oral sex on him, he repeatedly and maliciously told Plaintiff to "just take it." While Plaintiff was being orally raped by Defendant Lopez, upon information and belief, Defendant Lamorie had succeeded in removing Plaintiff's sweatpants and underwear. Plaintiff physical felt herself being penetrated by something vaginally, but she could not determine what it was she had been penetrated with at the time.

Plaintiff thereafter went in and out of consciousness as Defendant Lopez and Defendant Lamorie took turns raping her and violating her body. Every time Plaintiff was able to regain consciousness, she tried to push Defendant Lopez and Defendant Lamorie off of her and escape this terrible ordeal but the Assaulting Defendants repeatedly over-powered her and continued to violate her in multiple ways.

When Plaintiff next awoke, her sweatpants and underwear were completely off, and her shirt and sports bra were pushed up above her chest, exposing her breasts. At such time Defendant Lamorie was naked and had placed his lower body weight on top of Plaintiff, supporting his upper body with his arms and hands next to Plaintiff's head. Defendant Lamorie continued to rape Plaintiff, forcibly penetrating Plaintiff vaginally with his penis. Eventually, Defendant Lamorie finished and got off from on top of Plaintiff.

Almost immediately, Defendant Lopez replaced Defendant Lamorie and climbed on top of Plaintiff. Plaintiff told Defendant Lopez to "STOP" and "get off" of her. Defendant Lopez continued to hold Plaintiff down and proceeded to again forcibly rape Plaintiff. Plaintiff repeatedly told Defendant Lopez "no" and tried to push him off of her but found that she was unable to do so.

Defendant Lopez continued to forcibly rape Plaintiff vaginally until finally he finished and Plaintiff was able to escape the room.

**Plaintiff Reports the Assault to Her Friends and Family**

The morning after the assault, Plaintiff woke up to severe vaginal and abdominal pain. She felt very unsteady on her feet and was severely sore. Plaintiff was in disbelief about what happened to her. While still at Defendant Velasquez's house, Plaintiff confided in her friend "J" what the Assaulting Defendants had done to her the night before – that they had taken turns raping her in the bedroom. "J" advised Plaintiff to confront the Assaulting Defendants but she was too afraid.

While at Defendant Velasquez's home, Plaintiff's former boyfriend - who she was friends with at the time - contacted her about a group message he had received wherein

Defendant Lopez and Defendant Lamorie bragged about "smashing"[1] a girl. Plaintiff told him that she did not want to have sex with either of the boys and that she had tried to stop them and fight them off. Plaintiff's then boyfriend told Plaintiff that she had been raped and encouraged her to report it. Plaintiff immediately started to cry.

Eventually, Plaintiff's mother came to learn that "something" had happened to Plaintiff at Defendant Velasquez's house. When Plaintiff's mother asked Plaintiff, she told her about the assault. Plaintiff's mother immediately took Plaintiff to the local police precinct where they put in a complaint against Defendant Lopez and Defendant Lamorie. Both boys were subsequently arrested.

After learning about her daughter's assault, Plaintiff's mother also contacted the adults who had been present at the house the previous night but who had utterly failed to ensure her daughter's safety, allowing underage persons to consume alcohol and drugs and failing to stop the brutal assault on Plaintiff. Plaintiff's mother spoke with Defendant Sanchez and told her what had happened the previous night. In response, Defendant Sanchez told Plaintiff's mother that she should report the incident.

Upon information and belief, as an agent and faculty member of the School, Defendant Sanchez was a mandatory reporter under Colorado State Education Law and was therefore required to report Plaintiff's assault to all appropriate authorities. Upon information and belief, aside from advising Plaintiff's mother to file her own complaint, Defendant Sanchez took no further steps to report the assault to an authoritative body, nor to any of the co-defendants.

**Plaintiff's Family Reports the Rape to the School and Asks for an Investigation**

At the time of the assault, Plaintiff was enrolled as a student at Trinidad but attended practice at Primero and used Primero's facilities for extra-curricular activities and programs. On

---

[1] Upon information and belief, the term "smash" is crude slang for having sex with a person.

or about July 9, 2017, Plaintiff's father spoke over the phone with the School's superintendent, defendant William Naccarato ("Defendant Naccarato"), and informed him about Plaintiff's rape and the Assaulting Defendants' arrests. Upon information and belief, at the time of the assault, the School maintained, and continues to maintain, policies and procedures for reporting, investigating, and adjudicating complaints of sexual misconduct, harassment, and discrimination.

Initially, Defendant Naccarato seemed outraged by what had happened to Plaintiff and said that Primero would look out for Plaintiff. Defendant Naccarato spoke about putting into place a "safety plan" for Plaintiff and outlined what that safety plan would consist of. Defendant Naccarato assured Plaintiff's father that the Assaulting Defendants, who both played on the School's football team and later the School's basketball team, would not be allowed on the School's grounds and that arrangements would be made for them not to travel with Plaintiff during sports games and practices.

Plaintiff's father asked for an official investigation into Plaintiff's rape and, based on his conversations with Defendant Naccarato, was confident Defendants would look into the matter appropriately. Indeed, due to Defendants' response to Plaintiff's father's report, Plaintiff's parents felt strongly enough that the situation would be treated properly that Plaintiff's parents enrolled Plaintiff in Defendant Primero. Sadly, however, Plaintiff's family's trust was misplaced. Despite assurances from Defendants, Plaintiff continued to be tormented by Primero students, including Defendant Lopez's cousin, about the rape.  Plaintiff found it exceedingly difficult to be at Primero where she would have to face the Assaulting Defendants, and their friends and family, daily. In addition, it quickly appeared to Plaintiff and her family that the School was not taking any steps to protect her or investigate her rape.

**Plaintiff's Father Learns that Plaintiff**
**<u>Was Not the First Girl Targeted and Victimized by the Assaulting Defendants</u>**

In addition to speaking with Defendant Naccarato directly about Plaintiff's assault, Plaintiff's father also reached out directly to several members of the defendant School Board (the "Board") to inform the Board directly about what had happened. Upon doing so, Plaintiff's father learned distressing news – his daughter was not the first girl victimized by the Assaulting Defendants. Worse, the School and the Board had known all along about the boys' predatory habits and had done nothing to prevent such terrible acts from happening again.

**Despite Assurances, and a Court Order to Keep Plaintiff Safe,**
**Defendants Continue to Allow the Boys Access to Plaintiff and Protect Her Rapists**

Throughout her adolescence, whether or not she was enrolled as a student at the School, Plaintiff participated in different sports teams, specifically basketball and volleyball, through programs administered by the School. In addition, while enrolled at other schools, Plaintiff would visit the School to play sports as a part of her regularly scheduled team games. In addition, both Defendant Lopez and Defendant Lamorie played basketball for and at Primero. Moreover, Defendant Sanchez was the girls' assistant basketball coach and therefore present for the majority of, if not all, sporting events at and for Primero.

Understandably, Plaintiff and her family were apprehensive that Plaintiff would be forced to interact with, or at a minimum encounter, Defendant Lopez and/or Defendant Lamorie and/or Defendant Sanchez while engaging in sports at the School. In addition, Plaintiff and her family were apprehensive that Plaintiff would encounter Defendant Sanchez while engaged in sports at the School, as Defendant Sanchez had been present at the home during Plaintiff's rape and had, at least since learning about the Assault, done nothing to investigate the attack on Plaintiff by Defendants Lopez and Lamorie.

Throughout the criminal complaint proceedings, Plaintiff's parents continued to keep Defendants apprised of what was happening in court; Plaintiff's parents provided Defendant

Naccarato a copy of Plaintiff's complaint and allegations, as well as copies of Plaintiff's restraining orders against the Assaulting Defendants. Upon reviewing the court-ordered restraining orders, and listening to Plaintiff's concerns, Defendant Naccarato assured Plaintiff's father that the Assaulting Defendants would not be allowed on premises and that arrangements would be made for separate travel accommodations to keep the Assaulting Defendants and Plaintiff separated at all possible times.

Defendant Naccarato's assurances were mere empty promises, however, as Defendants allowed the boys to continue participating in the School and school activities as though nothing had happened. Indeed, when Plaintiff returned to the School to attend Primero's summer sport's camps, she immediately saw that both Defendant Lopez and Defendant Lamorie were in attendance.

In addition, it did not appear as though any of the faculty or staff at the camps saw any reason why the Assaulting Defendants should *not* be in attendance. Plaintiff's father immediately approached one of the staff members at the camp and told them the situation – that Plaintiff had been raped by Defendant Lopez and Defendant Lamorie and that the boys were supposedly prohibited from attending the School or the Primero summer camps. Shockingly, Plaintiff and her family learned that *no one* had been advised of this and that Defendant Naccarato had not taken a single step to protect Plaintiff despite his knowledge of Plaintiff's fears of running into the Assaulting Defendants, and the court issued restraining orders prohibiting the Assaulting Defendants from being near Plaintiff. When Plaintiff's father confronted Defendant Naccarato about this, Defendant Naccarato feigned ignorance and shock, and said that he would look into it right away. However, nothing was ever done and the Assaulting Defendants continued to be

permitted to attend the School and the sports camp, prohibiting Plaintiff from actively participating in such activities.

In addition, Defendants continued to permit Defendant Sanchez to serve as a coach at the School and attend sporting events in an official capacity despite representations to the contrary. Indeed, at one such sports game, Defendant Sanchez was seen working the ticket booth, meaning that if Plaintiff wished to attend a sporting event, she would have to come face to face with the woman who had utterly failed to protect her from being repeatedly sexually assaulted just mere months prior.

**Plaintiff's Father Is Accused of Being Too Aggressive
After He Continued to Advocate for a School Investigation into Plaintiff's Rape**

Plaintiff's father continued to press Defendants to initiate an investigation into the rape of his daughter, consistent with Defendant Naccarato's assurances and Primero's policies and procedures.

Plaintiff's father shockingly learned that, despite apprising Defendant Naccarato about the assault in July of 2017, by the end of the summer Defendant Nacarrato had *still* not discussed Plaintiff's rape or her and her family's request for an investigation with the Board. The only information the Board had was that provided to it by Plaintiff's father.

Plaintiff's family began to push even more strongly for an investigation into the Assaulting Defendants' conduct, as well as an investigation into Defendant Sanchez's involvement and potential repercussions against the adults involved in and/or present for the assault, namely Defendant Sanchez and Defendant Velasquez. In response, Defendants unequivocally refused to investigate Plaintiff's complaints and made it clear that no disciplinary or other actions would be taken against the Assaulting Defendants or any of the adults involved.

Rather, Defendants lashed out at *Plaintiff* and *Plaintiff's family*, lodging a complaint and accusing them of being "too aggressive" and harassing the Board about Plaintiff's assault.

**Defendants Continue to Victimize Plaintiff**

As she had done before, Plaintiff intended to register to play basketball for the 2017/2018 academic year but, when she attempted to do so, was summarily denied access. Plaintiff was utterly destroyed – not only would the School refuse to investigate her assault, now the School was barring her from access to educational and extra-curricular activities without any basis or reason.

Plaintiff's father asked several Board members for a reason as to why Plaintiff was not allowed back onto the School's basketball team after she complained about the Assault to Defendant Naccarato. Indeed, up until that point, the School's head basketball coach had been encouraging Plaintiff to play and, upon information and belief, did not have enough players for the team that season signed up.

In response, curiously, the School's principal contacted Plaintiff's family and stated that since Plaintiff had attempted to join the School's team after the deadline to sign up had expired, she would not be allowed onto the team as a matter of course. Such a reason was nothing more than an excuse to exclude Plaintiff from the School.

**Plaintiff Is Left in Utter Turmoil**

As a direct and foreseeable result of the sexual assault and Defendants' refusal to offer Plaintiff any meaningful support, Plaintiff's mental and emotional health suffered greatly. Plaintiff was made to feel ashamed of what had happened to her, and felt absolutely helpless as at seemingly every step, Defendants failed to put her needs first in favor of protecting her rapists.

The School's male students intentionally sexually assaulted Plaintiff, and in the process humiliated, degraded, and violated her, thereby robbing her of her dignity, and causing her severe emotional distress and lifelong damage. Indeed, not only has Plaintiff been forced to treat with a mental health provider, the trauma caused by Defendants' collective actions has caused physical injuries and impaired her ability to engage in everyday life, including her ability to engage in further consensual sexual relationships.

Adding insult to injury, as outlined above, Defendants intentionally placed Plaintiff's complaints on the proverbial back burner, forcing Plaintiff and her family to repeatedly plea for help. Meanwhile, the Assaulting Defendants were permitted to continue participating in the school and in Primero's educational and extra-curricular activities, seemingly without any consequences. Defendants made every accommodation for Plaintiff's assaulters and, in the end, permitted them to continue with their educational careers at the School without incident, doing everything Defendants could to hide Plaintiff's complaints.

As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered significant emotional injuries. Plaintiff has been traumatized, deprived of happiness and a feeling of security, and suffers daily from feelings of hopelessness and the inability to move on in her life from this tragic event.

In light of these facts, Plaintiff should be permitted to protect her identity by filing the Complaint under a pseudonym. Plaintiff is prepared to provide a statement of her true identity under seal, upon the Court's request.

## ARGUMENT

Federal Rule of Civil Procedure 10(1) requires that "every pleading" in federal court "must name all the parties." Fed. R. Civ. P. 10(a). However, "the rule is not absolute." *Plaintiff B*

*v.* Francis, 631 F.3d 1310, 1315 (11 Cir. 2011). It is within the district court's discretion to determine whether a plaintiff should be permitted to proceed under a pseudonym. *M.M. v. Zavaras*, 139 F.3d 798, 802 (10th Cir. 1998). In weighing circumstances to allow a party to proceed under a pseudonym, "the Court weighs plaintiff's interests in privacy against the public's interest in access to open court proceeding" *Patton v. Entercom Kansas City, LLC*, 2013 WL 3524157 (July 11, 2013, D-Ka) see also. *Zavaras, supra*.   "The Court exercises "informed discretion" when deciding whether to allow a plaintiff to proceed under the cloak of anonymity" *Patton, supra*, quoting *Zavaras* 139 F.3d. at 803.

Generally, in determining whether to permit a party to proceed anonymously, a court "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Does I Thru XXIII v. Advanced Textile Corp.,* 214 F. 3d 1058, 1068 (9th Cir. 2000). *See also*, *Plaintiff B v.* Francis, 631 F.3d at 1315-16 ("A party may proceed anonymously in a civil suit in federal court by showing that he has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.")(internal quotation marks omitted); *Doe v. Stegall*, 653 F.2d 180, 183 (5 Cir. Unit A Aug.1981) (Holding that, in evaluating whether a plaintiff has shown that he has [a substantial privacy right], the court should "carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns")(emphasis in original); *Grottano v. City of New York*, 2016 WL 2604803, at *1 (S.D.N.Y. Mar. 30, 2016) (*quoting Michael v. Blomberg L.P.*, 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015) ("The central inquiry in determining whether a plaintiff may proceed

pseudonymously is a balancing of a plaintiff's interest in anonymity … against both the public interest in disclosure and any prejudice to the defendant"))) (internal quotation marks omitted).

Many federal courts have permitted parties to proceed anonymously when special circumstances arise. Generally, courts allow the use of pseudonyms "[w]here it is necessary…to protect a person from harassment, injury, ridicule or personal embarrassment…." *U.S. v. Doe*, 665 F.2d 920, 922 (9th Cir. 1977) (citing *U.S. v. Doe*, 556 F.2d 391, 393 (6th Cir. 1977)). Courts "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." Does I Thru XXIII v. Advanced Textile Corp., 214 F. 3d 1058, 1068 (9th Cir. 2000).

The Tenth Circuit has repeatedly looked to the Eleventh Circuit's jurisprudence when deciding a motion to proceed anonymously. *See Doe v. Merck & Co., Inc.*, 2012 WL 555520, at *2 (D.Co. Feb. 17, 2012) ("The Tenth Circuit historically has looked to the Eleventh Circuit's jurisprudence regarding whether a plaintiff should be allowed to proceed anonymously"). The Elevneth Circuit has enumerated three contexts in which a pseudonym is appropriate: "1) matters of a highly sensitive and personal nature; 2) cases involving a real danger of physical harm; and 3) instances where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *See Doe v. Merck & Co., Inc.*, 2012 WL 555520, at *2 (*quoting Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (*citing Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)). *See also*, *M.M. v. Zavaras*, 139 F.3d 798, 800 (10th Cir. 1998).

As outlined below, a balancing of these factors leads to the inevitable conclusion that Plaintiff must be permitted to proceed anonymously in this litigation.

**A. The litigation involves matters that are highly sensitive and of a personal nature.**

Plaintiff should be permitted to proceed under a pseudonym given the highly sensitive and personal nature of this litigation and the facts and circumstances underlying Plaintiff's claims which is only exacerbated by the fact that Plaintiff was a minor when the alleged events took place. Plaintiff does not merely contend that the revelation of her name would result in embarrassment or public humiliation. Rather, Plaintiff notes the highly sensitive nature and privacy issues that could be involved with being publicly identified as a rape victim, particularly in light of the fact that the sexual assaults in question happened when Plaintiff was a minor, specifically 16-years old.

In fact, due to the highly sensitive nature of the circumstances surrounding this litigation and the overwhelming public interest in protecting victims of sexual assault, numerous courts around the country have permitted victims of sexual assault and plaintiffs alleging similar claims to proceed anonymously. *See e.g. Merck & Co., Inc.*, at *2 (noting that the use of a pseudonym is appropriate when the case involves injuries "of a sexual nature [which] may be personal, sensitive, and intimate"); *Doe v. Boulder Valley Sch. Dist. No. RE-2*, 2011 WL 3820781, at *2 (D.Co. Aug. 30, 2011) (finding that "plaintiffs' allegations of sexual misconduct and unlawful sexual contact involve intensely personal issues so rare as to warrant sealing the unredacted complaint"); *Plaintiff B. v. Francis*, 631 F.3d 1310, 1316-17 (11th Cir. 2011) (finding that anonymity was appropriate where the issues involved – "descriptions of the plaintiffs in various stages of nudity and engaged in explicit sexual conduct while they were minors" – "could not be of a more sensitive and highly personal nature"); *Prasad v. Cornell Univ.*, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) (permitting identification of alleged victim of sexual assault as "Jane Doe" during proceedings); *Grottano v. the City of New York*, 2016 WL 2604803 (S.D.N.Y. Mar. 30, 2016); *Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006); *Doe v. Penzato*, 2011 WL

1833007 (N.D.Ca. May 13, 2011); *Doe v. Evans*, 202 F.R.D. 173 (E.D.Pa. 2001); *Doe v. Western Am. Province of the Capuchin Franciscan Friars*, 2015 WL 8770017 (D. Or. Dec. 13, 2015) (allowing the plaintiff to proceed as "Jane Doe" in light of the "accepted practices of the federal courts of the United States, allowing those who have been victims of sexual assault and/or who fear reprisals from the particular litigation to commence cases under assumed names"); *Doe v. Cabrera*, 301 F.R.D. 1 (D.D.C. 2014) (allowing victim of sexual assault to proceed as a "Jane Doe" plaintiff); *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869 (7th Cir. 1997) (indicating that the use of "fictitious names [is] allowed when necessary to protect the privacy of … rape victims…"); *Roe v. St. Louis Univ.*, 2009 WL 910738 (E.D. Mo. Apr. 2, 2009) (allowing rape victim plaintiff to use a pseudonym because plaintiff's privacy interest outweighed the public's right to access judicial records); *E.E.O.C. v. Spoa, LLC.*, 2013 WL 5634337 (D. Md. Oct. 15, 2013) (finding that "sexual assault" is a "highly sensitive and personal matter"); *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004) (in denying the right to proceed anonymously, court emphasized the fact that the plaintiff was "not a minor, **a rape or torture victim**, a closeted homosexual, or … a likely target of retaliation by people who would learn her identity only from a judicial opinion or other court filing") (emphasis added).

Furthermore, the fact that Plaintiff was a minor when the alleged sexual assaults occurred weigh in favor of protecting Plaintiff's identity in this litigation. Indeed, courts within the Tenth Circuit consider a litigant status a minor at the time of the subject occurrence a factor weighing in favor or anonymity. *See Merck & Co., Inc.*, at *2; *Doe v. Boulder Valley Sch. Dist. No. RE-2*, 2011 WL 3820781, at *3 (finding that the fact the two of the three plaintiffs were minors when the subject of the action occurred and had only recently reached the age of majority gave "added weight to plaintiff's claims that they would suffer further psychological trauma if their names are

revealed"); *Plaintiff B. v. Francis*, 631 F.3d 1310, 1316-17 (11th Cir. 2011) (finding that anonymity was appropriate where the issues involved – "descriptions of the plaintiffs in various stages of nudity and engaged in explicit sexual conduct while they were minors" – "could not be of a more sensitive and highly personal nature"). Here, Plaintiff was a mere 16 years old when the subject events took place and has only reached the age of majority less than six months ago. Thus, Plaintiff's current age and her age at the time of the assaults weighs in favor of anonymity.

Further, courts have recognized that allowing a plaintiff to proceed anonymously in similar situations is not merely a tactic to avoid inconsequential embarrassment or humiliation. Indeed, courts have recognized that the forcing of plaintiffs who have been victims of sexual assault to publicly identify themselves – as would happen should Plaintiff be forced to proceed under her given name - would result in not only further embarrassment, but could result in further victimization and loss of dignity, resulting in more harm than good. *See Doe v. Cabrera*, 301 F.R.D. 1, at *5, n. 6 (D.D.C. 2014); *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y.1996); *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 267 (E.D.Tex. 2007).

Plaintiff, who has taken steps to protect her identity leading up to these proceedings, should be permitted to proceed anonymously due to the recognized highly sensitive and personal nature associated with being a minor-aged victim of sexual assault.

**B.  Disclosure of Plaintiff's identity would result in significant harm to Plaintiff.**

In addition, Plaintiff should be permitted to proceed anonymously in this matter as the revelation of her identify would result in significant harm to Plaintiff, the exact type of which she seeks to remedy by the commencement of this lawsuit. *See Doe v. Colgate Univ.,* 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016).

Courts have repeatedly recognized that the disclosure of the names of victims of sexual assault makes such individuals susceptible to added ridicule, stigmatization, and further mental and emotional harm. *See e.g.*, *Doe v. Cabrera*, 301 F.R.D. 1, at *5, n. 6 (D.D.C. 2014); *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y.1996); *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 267 (E.D.Tex. 2007); *E.E.O.C. v. Spoa, LLC.*, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) (finding that ordering the plaintiff to proceed under her own name "poses needless risk of mental harm" and further finding that "[i]t is not simply that Doe may face embarrassment from … widespread disclosure … but rather she may face psychological harm from having this sensitive experience made permanently available to anyone with Internet access"). Here, Plaintiff seeks redress for, among other things, the tremendous emotional harm she has suffered as a result of the Assault perpetrated by the Assaulter Defendants, and the remaining defendants' failure to address the criminal assault resulting in further torment and harm to Plaintiff. To force Plaintiff to reveal her identity would not merely fail to remedy the already present emotional wound she hopes to heal, but would leave her vulnerable to further harm. In other words, forcing Plaintiff to reveal her identity would not further any aspect of the litigation but would "instead pose[] a risk that Plaintiff would be subject to unnecessary ridicule and attention." *Doe v. Colgate Univ.,* 2016 WL 1448829, at *3.

Based on the foregoing, Plaintiff should be permitted to proceed anonymously, as requiring her to reveal her identity would result in significant harm to Plaintiff, including the exact damages she seeks to remedy in this matter; namely, physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities.

**C.  Defendants will not be prejudiced by allowing Plaintiff to proceed pseudonymously.**

Further, Plaintiff should be permitted to proceed anonymously as Defendants will not be prejudiced in any way by proceeding against an anonymous party.

"Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, Defendants are already aware of Plaintiff's true identity. Thus, there is no doubt that Defendants will have an unobstructed opportunity to conduct discovery, present their defenses and litigate this matter, regardless of whether Plaintiff identifies herself or proceeds anonymously.

Accordingly, Plaintiff must be permitted to proceed anonymously in this action as revealing her name will cause significant prejudice and harm to Plaintiff, while proceeding anonymously will not hinder Defendants in any way.

**D. There is a weak public interest in knowing Plaintiff's identity**

Plaintiff should also be permitted to proceed in this action anonymously as the public does not have a strong interest in knowing her identity. Considering the purely legal nature of the claims presented, there is a weak public interest in learning Plaintiff's identity as an individual.

"[T]he public generally has a strong interest in **protecting** the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-96 (E.D.N.Y. 2006) (emphasis added); *Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001) (finding that "the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights…"). While in the past courts strongly disfavored allowing plaintiffs to proceed anonymously except in extreme circumstances, the nature of the Internet today is such that any plaintiff's identity is readily accessible via a simple online search. Thus, courts must be willing

to afford additional protective measures to avoid further damage to a plaintiff involved in a matter concerning such egregious violations as the present one. *See Doe v. Boulder Valley Sch. Dist. No. RE-2*, 2011 WL 3820781, at *3 (Aug. 30, 2011) ("[A]lthough the media frequently exercise discretion in not publishing the names of sexual assault victims, electronic case filing allows anyone with an internet connection to access public pleadings, which means that revealing plaintiffs' names could expose them to contact be persons seeking to exploit their perceived vulnerability").

Further, particularly in the current social and political climate, there is no doubt that "cases stemming from … sexual abuse on [school] campuses have garnered significant media attention, posing the risk of further reputational harm to [] plaintiffs in these cases ..." *Doe v. Colgate Univ.,* 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016); s*ee also Doe v. Brown,* 2016 WL 715794, at * 1 (D.R.I. Feb. 22, 2016) ("This case concerns an issue that has been the subject of increasing attention and controversy, particularly in academia, and which has garnered much recent media and scholarly commentary").

Here, if Plaintiff were required to reveal her name, even if Plaintiff were to succeed on her claims against Defendants, the public's access to her identity would leave her vulnerable to further exploitations and would result in further damage to her future educational and career endeavors, resulting in additional mental, emotional and psychological harm, the very harms which she seeks to remedy in this action. As such, "protecting the anonymity of sexual assault victims and those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected." *Doe v. Colgate Univ.,* 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016).

Finally, there is simply nothing about the status of the Plaintiff that would heighten any public interest beyond the normal public interest in any judicial proceedings sufficient to outweigh Plaintiff's right to privacy. Moreover, the public's knowledge will only be minimally restricted, as it will still know what is alleged to have occurred. Allowing Plaintiff to proceed anonymously will not significantly obstruct the public's interest in this matter. To the contrary, forcing Plaintiff to reveal her identity could have a potential chilling effect on other similarly situated future plaintiffs, a result widely recognized by federal courts across the nation. *See e.g.*, *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-96 (E.D.N.Y. 2006); *Doe v. Cabrera*, 301 F.R.D. 1, at *6-8, n. 9 (D.D.C. 2014) ("[t]his Court agrees that *unnecessarily* compelling victims of alleged sexual assault to reveal their identities in a case could set forth precedent that has the unintended consequence of discouraging similarly situated victims in the future from reporting sexual assault crimes"); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D.Pa. 2001)) (emphasis added) (finding that "the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights…").

Accordingly, there is not a strong public interest in knowing Plaintiff's identity as an individual, as the issues presented to this Court concern a much greater population of potential plaintiffs.

Based on the foregoing, in consideration of the balancing of relevant factors, the Court should allow Plaintiff to employ a pseudonym in this matter. The interests of Defendants and/or the public will not be harmed at this early stage of the case if Plaintiff's name is not revealed. Plaintiff and her attorneys are prepared to address measures to protect the confidentiality of her identity should the Court require disclosure to the public at a later stage in the proceedings.

## **CONCLUSION**

For these reasons and such other reasons as may appear just to the Court, Plaintiff, Jane Doe, requests that his Motion to Restrict Access Pursuant to D.C. Colo. L. Civ. R 7.2 be granted ordering a Level 1 Restriction on all filings pertaining to this case.

Dated this 13th day of March, 2019.

<div style="margin-left:50%">

*/s/ Michael J. Mirabella*
*[e-filing – March 13, 2019]*

_____

Michael J. Mirabella, Esq.
Campbell, Killin, Britain, & Ray, LLC.
270 St. Paul Street, Suite 300
Denver, Colorado 80206
Tel: 303-394-7209
mmirabella@ckbrlaw.com

-and-

*/s/ Andrew T. Miltenberg*
*[e-filing – March 13, 2019]*

_____

Andrew T. Miltenberg, Esq.
Gabrielle M. Vinci, Esq. (admission pending)
363 7th Avenue, Fifth Floor
New York, NY  10001
212-736-4500
amiltenberg@nmllplaw.com
gvinci@nmllplaw.com

***COUNSEL FOR PLAINTIFF***

</div>