IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00746-KMT

JANE DOE,

     Plaintiff,

v.

BOARD OF EDUCATION OF THE PRIMERO REORGANIZED SCHOOL DISTRICT RE-2;
WILLIAM NACCARATO, Individually, and in his Official Capacity as agent of the Primero
Reorganized School District RE-2; TRISH SANCHEZ, Individually, and in her Official
Capacity as agent of the Primero Reorganized School District RE-2; D.L., a minor; Z.L., a
minor; and DEBRA VELASQUEZ,

     Defendants.

---

## MOTION TO DISMISS CLAIMS AGAINST TRISH SANCHEZ[1]

---

Defendant Trish Sanchez by and through her attorneys, Hall & Evans LLC, and pursuant

to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectfully requests this Court dismiss Plaintiff Jane

Doe's claims against Ms. Sanchez, as follows:

### INTRODUCTION

This is a tort action arising from a sexual encounter between Plaintiff, her ex-lover, and his

friend. Plaintiff alleges she was the victim of a sex assault; however, all criminal charges against

Defendant D.L. and Defendant Z.L. regarding Plaintiff's allegations against them were dismissed

---

[1] This Court granted Ms. Sanchez' Motion for Leave to File Excess Pages on 5-28-19. [Doc. 36]
This Motion complies with that Order.

1

entirely by the District Attorney's Office for Colorado's Third Judicial District.[2] (See Defendant D.L.'s Motion for Appointment of Counsel [Doc. 32] at pp. 1-2; Defendant Debra Velasquez' Motion for Appointment of Counsel [Doc. 25] at pp.1-2).

Now, Plaintiff asserts fifteen causes of action against the named Defendants, including seven claims against Ms. Sanchez in her individual and official capacities. Plaintiff's claims against Ms. Sanchez include: Negligence (Fourth Cause of Action); Intentional Infliction of Emotional Distress ("IIED") (Fifth Cause of Action); Negligent Infliction of Emotional Distress ("NIED") (Sixth Cause of Action); Outrageous Conduct (Seventh Cause of Action); Negligence (Thirteenth Cause of Action); Violation of Colorado's Dram Shop Act (Fourteenth Cause of Action); and Civil Conspiracy (Fifteenth Cause of Action). All of Plaintiff's claims sound in tort and all claims fail in the pleadings.

The claims against Ms. Sanchez in her official capacity are duplicative of the claims asserted against the Primero School Board and must be dismissed with prejudice under the redundancy doctrine. Plaintiff fails to allege Ms. Sanchez engaged in "willful and wanton conduct," therefore Ms. Sanchez is entitled to immunity under the Colorado Governmental Immunity Act ("CGIA"). Plaintiff also failed to provide sufficient Notice under the CGIA. Lastly, each of the seven claims against Ms. Sanchez fail under Fed. R. Civ. P. 12(b)(6) because Plaintiff fails to allege sufficient facts to maintain those claims or those claims are precluded as a matter of law.

---

[2] The procedural history of D.L. and Z.L.'s criminal cases is an appropriate subject for judicial notice under Fed. R. Evid. 201. The dismissals are embodied by orders from a Colorado State court, and the fact of dismissal may be readily determined from sources whose accuracy cannot be questioned. Fed. R. Evid. 201(b)(2). See Allmon v. Lappin, 11-cv-00549-MSK-CBS, 2013 WL 1149507 at *n.2 (D. Colo. 2013) (taking judicial notice of plaintiff's criminal procedural history).

## BACKGROUND FACTS[3]

On July 7, 2017, Plaintiff decided to attend a party in Weston, Colorado with a group of her friends. (Second Amended Complaint ("SAC") at ¶ 27.) At the time, Plaintiff was enrolled as a student at Trinidad High School in Trinidad Colorado. (Id. at ¶¶ 20, 78.)  Before Plaintiff went to the party, she and her group stopped at a nearby river and began drinking alcohol and smoking marijuana. (Id. at ¶¶ 29-31.)   Around 9:00 or 10:00 PM, the group left the river and drove to Defendant Velasquez's house, D.L.'s grandmother. (Id. at ¶¶ 14, 32.)  Ms. Sanchez and Ms. Velasquez were present at the home when Plaintiff and her group arrived. (Id. at ¶ 32.)

While at the party, Plaintiff sat around a firepit with friends where she continued to drink and smoke; consuming eight additional beers and smoking marijuana from a joint. (Id. at ¶¶ 34, 36.)  Plaintiff consumed these substances voluntarily. (See generally SAC.)  Plaintiff became inebriated as she continued to smoke and drink with her friends. (Id. at ¶¶ 34, 37-38.)  Plaintiff alleges she was sexually assaulted while in this intoxicated state. (Id. at ¶¶ 42-61.)

The next day, while still at Ms. Velasquez's house, Plaintiff told her friend "J" she had been raped the night before. (Id. at ¶ 63.)  "J" told Plaintiff to confront D.L. and Z.L. while still at the Velasquez home but Plaintiff declined. (Id. at ¶ 64.)  Plaintiff's ex-boyfriend called and asked her about a text message he received from D.L. and Z.L. where they "bragged" about having sex with her. (Id. at ¶ 66.) Plaintiff also told her then-boyfriend about the sexual encounter and told him she did not want to have sex with D.L. or Z.L. (Id. at ¶ 67). Plaintiff next told her sister's boyfriend what happened and when her mother "came to learn" something had happened and asked

---

[3] Except where noted, the facts are taken from the Second Amended Complaint and are accepted as true only for purposes of this Motion to Dismiss.

4190836.1

her about it, she finally told her mother. (Id. at ¶¶ 69-70). Plaintiff never told Ms. Sanchez about the alleged assault. (See generally SAC.)

Plaintiff's mother took Plaintiff to the police station where they filed a criminal complaint against D.L. and Z.L. (Id. at ¶ 71.)  Police officers are mandatory reporters of child abuse under Colorado law. Colo. Rev. Stat. § 19-3-304(2)(s). Both boys were arrested on sexual assault charges the same day. (SAC at ¶¶ 71, 79.)

Plaintiff's mother also took Plaintiff to the hospital where hospital staff performed a sexual assault forensic examination. (Id. at ¶ 72.)  Physicians, registered nurses, licensed practical nurses, and hospital personnel engaged in the admission, care, or treatment of patients are all mandatory reporters under Colorado law. Colo. Rev. Stat. § 19-3-304(2)(a), (i)-(j).

Plaintiff's mother ultimately contacted Ms. Sanchez to inform Ms. Sanchez of the alleged assault. (SAC at ¶¶ 74-75.)  Ms. Sanchez instructed Plaintiff's mother to call the police and file a report – which Plaintiff had already done. (Id. at ¶ 75.)  Since the alleged incident, Ms. Sanchez has not spoken with Plaintiff and has had limited contact with Plaintiff in the form of fleeting, transitory, encounters at school events and functions. (See generally SAC.)

Plaintiffs submitted a Title IX complaint to the Office of Civil Rights, which investigated and found "insufficient evidence to support the Complainants' allegation the District did not provide a prompt and equitable response to their report of sexual harassment." (See OCR Disposition Letter,[4] February 17, 2018, attached as Exhibit A.)

---

[4] A court may take judicial notice of rulings and reports of administrative agencies.  Martinez v. City and Cnty. of Denver, No. 08-cv-01503-PAB-MJW, 2010 WL 1380529, at *1 (D. Colo. March 31, 2010) (taking judicial notice of administrative records from the EEOC while considering a Rule 12(b)(6) motion to dismiss); Northgate Motors, Inc. v. Gen. Motors Corp., 111 F.Supp.2d 1071, 1077 (E.D. Wis. 2000) (administrative agency files and decisions are properly the subject of

4

## ARGUMENT

I.   **THE CGIA IMMUNIZES PUBLIC EMPLOYEES FROM TORT ACTIONS AND BARS PLAINTIFF'S FOURTH, FIFTH, SIXTH, SEVENTH, AND FIFTEENTH CAUSES OF ACTION AGAINST MS. SANCHEZ**

The CGIA governs the circumstances under which a person may maintain a tort action against the State of Colorado, its political subdivisions, and its employees. See Colo. Rev. Stat. § 24-10-101, *et seq.*; Mesa Cnty. Valley Sch. Dist. No. 51 v. Kelsey, 8 P.3d 1200, 1204 (Colo. 2000); Springer v. City & Cnty. of Denver, 13 P.3d 794, 798 (Colo. 2000) ("CGIA establishes governmental immunity from suit against public entities and their employees in tort cases"). A dismissal under the CGIA is a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). If the CGIA does not provide for a waiver of immunity for the claims asserted in a complaint, the court lacks subject matter jurisdiction over the claims and must dismiss the complaint. Jaffe v. City & Cnty. of Denver, 15 P.3d 806, 810-11 (Colo. App. 2000); see also Colo. Rev. Stat. § 24-10-106(1) (establishing immunity and waivers in specified areas). Claims that fall within the CGIA's purview implicate a court's subject matter jurisdiction and are evaluated in accordance with Rule 12(b)(1). Young v. Brighton Sch. Dist. 27J, 325 P.3d 571, 575 (Colo. 2014); Sumpter v. Albrecht, No. 10-cv-00580, 2011 WL 940901 at *13 (D. Colo. 2011) (dismissing CGIA claims under Fed. R. Civ. P. 12(b)(1)).

The Primero School District is a public entity to which the CGIA applies. Colo. Rev. Stat. § 24-10-103(5) (defining "public entity" to include school districts). The CGIA provides that a

---

judicial notice and may be considered without converting a Fed. R. Civ. P. 12(b)(6) motion into one for summary judgment); Thomas v. Westchester Cnty. Health Care Corp., 232 F.Supp.2d 273, 275 (S.D.N.Y. 2002) (district court may take judicial notice of records and reports of administrative bodies without converting motion to dismiss into one for summary judgment).

public entity shall be immune from liability in all claims that lie in tort or could lie in tort, unless the injury is among those for which immunity is expressly waived. Colo. Rev. Stat. § 24-10-108; see also Berg v. State Bd. of Agric., 919 P.2d 254, 258 (Colo. 1996). Plaintiff does not allege Ms. Sanchez waived her immunity as an employee under the CGIA or that a statutory exception to immunity applies. Therefore, Plaintiff's claims against Ms. Sanchez are barred unless Plaintiff can show willful and wanton conduct. See Colo. Rev. Stat. § 24-10-118(2)(a).

### A. Plaintiff's Claims are Barred Because Plaintiff Did Not Comply with the CGIA's Notice Requirements.

The CGIA contains clear procedural prerequisites to filing suit that must be satisfied; otherwise, the claim is absolutely prohibited. The main prerequisite is a Notice of Claim. Within 182 days after a claimant becomes aware of an injury, a claimant must send a written notice to the governing body of the public entity or the public entity's attorney. See Colo. Rev. Stat. § 24-10-109(1), (3)(a); see also Barham v. Scalia, 928 P.2d 1381, 1384-85 (Colo. App. 1996).

The contents of the notice must include "[a] concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of." Colo. Rev. Stat. § 24-10-109(2)(b). "Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action." Colo. Rev. Stat. § 24-10-109(1). If a plaintiff fails to comply with the statutory requirements of the CGIA, including notice, sovereign immunity bars suit against a public entity or employee for injury which lies or could lie in tort. See Trinity Broadcasting of Denver, Inc. v. City of Westminster, 848 P.2d 916, 924 (Colo. 1993).

A notice is sufficient if it substantially complies with the CGIA's requirements. Carothers v. Archuleta Cnty. Sheriff, 159 P.3d 647, 652 (Colo. App. 2006). Substantial compliance requires

the notice include "the information necessary to investigate, remedy any problem, and make adequate financial arrangements to meet any potential liability." Id.; see also Hamon Constrs., Inc. v. Carter & Burgess, Inc., 229 P.3d 282, 287 (Colo. App. 2009) (dismissing claims for insufficient notice).

Here, Plaintiff's Notice does not substantially comply with the CGIA's requirements. (See Notice of Claim ("Notice") attached as Exhibit B).[5] In particular, the Notice does not satisfy Colo. Rev. Stat. § 24-10-109(2)(b), which requires a description of the facts surrounding Plaintiff's claim. There is nothing in the Notice that discusses what actions Ms. Sanchez undertook to the detriment of Plaintiff. As to Ms. Sanchez, the Notice provides, in total, "[a]t the time of the assault, there was an adult present, who was employed by Primero School as a substitute teacher and coach." (See Notice at p.1.) Plaintiff's Notice does not even attribute this conduct to Ms. Sanchez by name. From this statement, Plaintiff is purported to put Ms. Sanchez on notice of the seven claims against her. This short statement, read in the context of the rest of the Notice, fails to allege any behavior on the part of Ms. Sanchez that would apprise her of what prohibited conduct she is alleged to have committed. Even if the Notice were clear as to who "the adult present" was, the Notice only states Ms. Sanchez was present when the alleged assault occurred and she works for the School District. There is no mention of any tortious conduct involving Ms. Sanchez and her mere presence in the same building where an assault is alleged to have occurred is wholly insufficient to place Ms. Sanchez or the School Board on notice of the seven claims against her.

---

[5] Because CGIA immunity is a jurisdictional issue, matters outside the pleadings can be considered. Moreover, because Plaintiff references and relies on this Notice in her Second Amended Complaint, (SAC at ¶ 19), attaching this Notice would not convert this Motion to Dismiss into a Motion for Summary Judgment under Fed. R. Civ. P. 12(b)(6). GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997).

4190836.1

See <u>Hamon</u>, 229 P.3d at 298 ("notice must contain '[a] concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of,' and '[a] concise statement of the nature and the extent of the injury claimed to have been suffered. . . .'") (quoting Colo. Rev. Stat. § 24-10-109(1)(2)(b)(d)).

Moreover, there is nothing to indicate Ms. Sanchez was involved in any decision regarding the investigation of D.L. and Z.L.'s conduct, that she was an instrument of harassment used by the School Board, that she made or implemented any School Board Policy, or that she otherwise caused any injury to Plaintiff. Most importantly, Plaintiff's Notice does not allege Ms. Sanchez had any involvement with the alleged assault, had any power to stop the alleged assault, or Ms. Sanchez even knew the alleged assault would occur, was occurring, or actually did occur. <u>See</u> fn. 1, *supra*. This lone sentence concerning Ms. Sanchez simply does not identify Ms. Sanchez' involvement in any tortious conduct and certainly does not provide the statutory notice to which Ms. Sanchez is entitled.

For these reasons, Plaintiff's Notice of Claim does not substantially comply with the CGIA and her Fourth, Fifth, Sixth, Seventh, and Fifteenth Causes of Action against Ms. Sanchez must be dismissed.

### B.   Plaintiff's Claims Against Ms. Sanchez are Barred by the Colorado Governmental Immunity Act Because Plaintiff Does Not Allege Willful and Wanton Conduct

Unlike a public entity, which can be subject to liability under the CGIA only through a waiver, a public employee can be liable for a tort claim if a plaintiff demonstrates the employee's actions were "willful and wanton" within the meaning of the CGIA. Colo. Rev. Stat. § 24-10-118(2)(a); <u>Jarvis v. Deyoe</u>, 892 P.2d 398, 401 (Colo. App. 1994); <u>Martinez v. Estate of Bleck</u>, 379

4190836.1

P.3d 315, 317 (Colo. 2016) ("public employee shall be immune from liability for actions that arise in tort or could arise in tort unless such actions were willful and wanton."). The CGIA does not define the phrase "willful and wanton conduct," however, the Colorado Supreme Court has approved various definitions. Martinez, 379 P.3d at 322-23; see, e.g., Moody v. Ungerer, 885 P.2d 200, 205 (Colo. 1994) (looking to the definition of "willful and wanton"). Although the Colorado Supreme Court has declined to pick one single definition for "willful and wanton," it has noted the cases discussing "willful and wanton conduct" all share a common feature; namely, a conscious disregard of a danger. Martinez, 379 P.3d at 323.

Willful and wanton conduct connotes acts or omissions which extend beyond mere negligence. Terror Mining Co., Inc. v. Roter, 866 P.2d 929, 933-34 (Colo. 1994); Forman v. Brown, 944 P.2d 559, 564 (Colo. App. 1996) ("[w]illful and wanton conduct is purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of others."). "In contrast to simple negligence . . . willful and wanton misconduct involves a purposeful act or omission which the actor should have realized was dangerous to another but nonetheless was committed recklessly and without regard to the other's safety." Schlessinger v. Schlessinger, 796 P.2d 1385, 1388 (Colo. 1990).

"In any action in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint." Colo. Rev. Stat. § 24-10-110(5)(a). "[F]ailure to plead the factual basis of an allegation that an act or omission of a public employee was willful and wanton shall result in dismissal of the claim for failure to state a claim upon which relief can be granted." Colo. Rev. Stat. § 24-10-110(5)(b). Alleging in conclusory fashion the defendant engaged in willful and

4190836.1

wanton conduct is not sufficient to overcome immunity from suit under the CGIA. <u>Gray v. Univ of Colo. Hosp. Auth.</u>, 284 P.3d 191, 199 (Colo. App. 2012) (complaint cannot merely assert public employee's acts or omissions were willful and wanton).

A court must determine as a matter of law if a plaintiff has sufficient facts to establish willful and wanton conduct on the part of an individual employee. Colo. Rev. Stat. § 24-10-118(2)(a); <u>Jarvis</u>, 892 P.2d at 401-02. Moreover, "it is not enough for the district court to merely determine that the complaint adequately alleged that the conduct was willful and wanton," the district court "must determine whether the conduct was in fact willful and wanton." <u>L.J. v. Carricato</u>, 413 P.3d 1280, 1286 (Colo. App. 2018) (citing <u>Martinez</u>, 379 P.3d at 317, 322).

Finally, "a plaintiff must establish not only the elements of [the tort claim], but also that the defendant's conduct was done heedlessly and recklessly, without regard to the consequences, or rights and safety of others, particularly plaintiff." <u>Drake v. City & Cnty. of Denver</u>, 953 F. Supp. 1150, 1160 (D. Colo. 1997). Where a plaintiff's "allegations regarding the willfulness and wantonness of a governmental official's conduct are the same as form the basis of the underlying tort itself, plaintiff will not avoid application of the CGIA." <u>Id.</u>

While it is unclear from Plaintiff's Second Amended Complaint what specific tortious conduct Ms. Sanchez is alleged to have committed in this case, Plaintiff's claims appear to be premised on the allegations that Ms. Sanchez failed to protect Plaintiff by not reporting or investigating the alleged assault despite it already having been reported, (SAC at ¶¶ 71-72, 74-75, 112); by being on the premises at the time the alleged assault occurred, (<u>id.</u> ¶¶ 32, 41, 112); by working as an assistant basketball coach and ticket-taker at the school Plaintiff chose to attend after the alleged assault, (<u>id.</u> at ¶¶ 10, 20, 84, 110-112, 122-23); or because Ms. Sanchez allegedly

knew or knowingly permitted Plaintiff to consume alcohol and recreational substances despite Plaintiff's admission she was already intoxicated before arriving at Ms. Velasquez' home.  (id. at ¶¶ 30-33, 254-62, 265-71).[6]

None of these allegations rise to the level of "willful and wanton conduct" as required by the CGIA. See Forman, 944 P.2d at 564 ("[w]illful and wanton conduct is purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of others."). Plaintiff's "complaint must allege 'specific facts to support a reasonable inference' the employee was consciously aware his or her acts or omissions created danger or risk to the safety of others, and that he or she acted, or failed to act, without regard to the danger or risk.'" Carricato, 413 P.3d at 1288 (quoting Gray, 284 P.3d at 198). Plaintiff fails to allege so here.

Where Plaintiff names Ms. Sanchez specifically, she points to only innocuous behaviors and not any conduct demonstrating Ms. Sanchez consciously disregarded a known risk. See Carricato, 413 P.3d at 1288 (complaint must allege the employee was consciously aware his or her acts or omissions created danger or risk to the safety of others, and he or she acted, or failed to act, without regard to the danger or risk). For example, in Plaintiff's "Operative Facts and Allegations" section, (SAC at ¶¶ 20-149), Plaintiff only alleges Ms. Sanchez was present at the house, (id. at ¶¶ 32-33, 41), Ms. Sanchez did not make a report regarding the assault, (id. at ¶¶ 74-77), Ms. Sanchez worked for the school, (id. at ¶¶ 110-112, 122-23), Plaintiff's parents wanted Ms. Sanchez investigated, (id. at ¶ 131), and Ms. Sanchez permitted the minors to drink at Ms. Velasquez' home,

---

[6] The grounds for dismissal of Plaintiff's Dram Shop Act claim is discussed more fully in Section III, *infra*.

(id. at ¶ 32-33). This is every reference to Ms. Sanchez in the general allegations and none of these allegations support a court finding of "willful and wanton conduct." Forman, 944 P.2d at 564.

Plaintiff instead offers nothing more than the conclusory allegation that all the "Defendants' behavior was malicious, unjustifiable, intentional and/or willful, wanton, outrageous, and conducted with full knowledge of the law," (SAC at ¶ 148), without averring any facts whatsoever to supports these contentions. Gray, 284 P.3d at 199 (complaint cannot merely assert public employee's acts or omissions were willful and wanton).

Furthermore, Plaintiff asserts willful or wanton conduct in five paragraphs in her Second Amended Complaint; none of these paragraphs specifically mention Ms. Sanchez or any specific conduct she is alleged to have committed willfully and wantonly. (See SAC at ¶¶ 148, 151, 162, 173, 182.) Plaintiff does not allege any reckless conduct throughout the entirety of the Second Amended Complaint and does not allege any of the Defendants consciously disregarded any known danger to Plaintiff or anyone else. (See generally SAC); see also Walcott v. Total Petroleum, Inc., 964 P.2d 609, 613 (Colo. App. 1998) (citing Welch v. R.R. Crossing, Inc., 488 N.E.2d 383 (Ind. App. 1986) (court found no case holding intentional criminal assault was reasonably foreseeable merely because assailant had been served alcohol beyond the point of intoxication). Plaintiff's failure subjects her claims against Ms. Sanchez to dismissal.

The specific allegations in Plaintiff's causes of action fare no better. Plaintiff's Fourth, Fifth, Sixth, and Seventh Causes of Actions fail to mention Ms. Sanchez at all. (See generally SAC.) Because Plaintiff failed to allege, with specificity, that Ms. Sanchez acted willfully and wantonly, Plaintiff's Fourth, Fifth, Sixth, Seventh, and Fifteenth Causes of Action, against Ms. Sanchez are barred by the CGIA.

12

### C.  The Claims against Ms. Sanchez in her Official Capacity Fail as a Matter of Law under the Redundancy Doctrine

Plaintiff sues Ms. Sanchez in her official and individual capacity. The official capacity claims are redundant of the claims against Board of Education of the Primero School District and must be dismissed for that reason alone. See Myers v. Okla. Cnty. Bd. of Cnty .Comm'rs, 151 F.3d 1313, 1316 n. 2 (10th Cir. 1998) (citing Watson v. City of Kansas City, 857 F.2d 690, 695 (10th Cir. 1988) ("suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same."); Lyall v. City of Denver, 319 F.R.D. 558, 569 (D. Colo. 2017) (discussing the "long standing authority for the notion that individuals sued in their official capacities are redundant if the governmental entity for whom they work is also a defendant."). Because Plaintiff's claims against Ms. Sanchez in her official capacity are redundant of Plaintiff's claims against Primero School Board, her Fourth, Fifth, Sixth, Seventh, and Fifteenth Causes of Action official capacity claims must be dismissed.

## II.   ALL OF PLAINTIFF'S COMMON LAW CLAIMS AGAINST MS. SANCHEZ SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A COGNIZABLE CLAIM

As discussed above in Section I.A., each of Plaintiff's tort claims against Ms. Sanchez are subject to dismissal pursuant to the CGIA. However, even if Ms. Sanchez did not have CGIA immunity, the tort claims fail to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6).

### A.   Plaintiff's Fourth Cause of Action (Negligence) Fails to State a Claim

Plaintiff's Fourth Cause of Action and first negligence claim alleges the School Defendants failed to protect her from a "sexually hostile environment" after she enrolled at Primero. (SAC ¶¶ 179-186.)

1.   *Ms. Sanchez had no duty to protect Plaintiff.*

First, Plaintiff cannot demonstrate a duty Ms. Sanchez owed to Plaintiff. There is simply no evidence the conduct complained of was reasonably foreseeable by Ms. Sanchez, thus triggering a duty to impose specific forms of supervision to prevent it. See Lindeman v. Corp. of the Pres. of the Church of Jesus Christ of Latter-Day Saints, 43 F. Supp. 3d 1197, 1212 (D. Colo. 2014) (refusing to find duty where no evidence that Sunday School Teacher's conduct was reasonably foreseeable by defendant thus triggering a duty to impose specific forms of supervision to prevent it); see also Jones v. Bd. of Educ., 854 P.2d 1386, 1389-90 (Colo. App. 1993) (rejecting affirmative duty of teachers and school officials to protect children from sexual abuse and finding no common law duty where defendants had no knowledge of sex abuse);  Jefferson Sch. Dist. v. Justus, 725 P.2d 767, 770 (Colo. 1986) (custodial duty only requires school personnel to protect children from foreseeable negligence of third parties); see Maldonado v. Josey, 975 F.2d 727, 732 (10th Cir. 1992), cert. denied, 113 S. Ct. 1266 (1993) (holding "compulsory attendance laws do not create an affirmative constitutional duty to protect students from the private actions of third parties"); see also Graham v. Ind. Sch. Dist. No. I-89, 22 F.3d 991, 994-95 (10th Cir. 1994) (holding compulsory attendance laws do not create special relationship even when school officials know of a particular foreseeable danger to students); Walcott, 964 P.2d at 613 (court found no case holding intentional criminal assault was reasonably foreseeable merely because assailant had been served alcohol beyond the point of intoxication) (citation omitted).

2.   *Plaintiff has not alleged any specific conduct against Ms. Sanchez.*

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the complaint is to "give

opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief." Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n, 891 F.2d 1473, 1480 (10th Cir. 1989) (citation and internal quotations omitted). "The burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants." Robbins, 519 F.3d at 1250.

Plaintiff's allegations under this Cause of Action refer only to the "School Defendants," none mention Ms. Sanchez by name or allege what action or inaction she is alleged to have performed. Id. ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular . . . acts they are alleged to have committed."). Plaintiff is obligated to explain what each defendant did to her, when the defendant did it, how the defendant's action harmed her, and what specific legal right the defendant violated. Id.; Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007); Robbins, 519 F.3d at 1250.[7] This is not an onerous standard. Especially here where it is undeniable Plaintiff can articulate specific fact-based allegations against a defendant where she believes it is warranted. (See SAC ¶¶ 42-61.) The disparity between those specific allegations and the naked conclusory statements lobbed against Ms. Sanchez is stark. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

---

[7] Although Robbins is a § 1983 case, this reasoning applies with equal force here. At the center of Robbins, was "a claim of qualified immunity by state officials [and] employees who were sued for damages in their personal capacity for injuries to a child inflicted by a third party." 519 F.3d at 1248.

provide the grounds of her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555.

   3. *Plaintiff cannot show Ms. Sanchez contributed to a sexually hostile environment.*

   Plaintiff alleges "[t]he School Defendants knew, or should have known, of the serious risk of sexual harassment and assault that was occurring on the School Defendants' premises, and knew and/or reasonably should have known of the risk of sexual violence toward their female students, particularly from Plaintiff's assaulters" and "[t]he School Defendants knew and/or reasonably should have known of the Assaulting Defendants' histories of harassing and targeting female students." (SAC at ¶¶ 180-81.) However, Plaintiff does not establish Ms. Sanchez' knowledge of D.L.'s or Z.L.'s history, that such histories are true, or why Ms. Sanchez should have known any problem existed. There are also no specific allegations as to what D.L. or Z.L. are alleged to have done in the prior incidents. Plaintiff alleges D.L. was involved in a "sexting" incident and Z.L. has been "accused" of sexual misconduct. (<u>Id.</u> at ¶¶ 104-05.) These allegations are so general as to encompass a wide swath of conduct; thus, Plaintiff has not "nudged her claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

   Furthermore, there is no allegation anyone reported D.L. or Z.L.'s alleged prior malfeasance to Ms. Sanchez. Plaintiff does not identify any specific representative of the School District who was involved with either of the initial accusations made against D.L. and Z.L. Plaintiff only alleges "Defendants had known all along about the boys' predatory habits and had done nothing to prevent such terrible acts from happening again." (SAC at ¶ 103.) Plaintiff never describes with any specificity what "predatory habits" the D.L. and Z.L. are alleged to have exhibited or what actions Ms. Sanchez should have taken to prevent D.L. or Z.L. from acting upon

16

those behaviors "again." These allegations, taken as true, are wholly insufficient to establish Ms. Sanchez was negligent toward Plaintiff. Plaintiff's claim should be dismissed.

> **B.  Plaintiff's Fifth and Seventh Causes of Action Against Ms. Sanchez (IIED and Outrageous Conduct) Both Fail to State a Claim.**

> *1.  IIED and Outrageous Conduct are the same claim under Colorado law.*

As a preliminary matter, claims of outrageous conduct and IIED are simply "two ways of stating the same claim." English v. Griffith, 99 P.3d 90 (Colo. App. 2004); see also Coors Brewing Co. v. Floyd, 978 P.2d 663, 665 (Colo. 1999) (describing this tort as "intentional infliction of emotional distress by outrageous conduct"). At a minimum, one of these redundant claims must be dismissed.

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. . . ." Culpepper v. Pearl Street Bldg., 877 P.2d 877, 882 (Colo. 1994). The elements of a claim for outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff to suffer severe emotional distress. Id. "Outrageous conduct" is defined as conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."  Id. (quoting Destefano v. Grabrian, 763 P.2d 275, 286 (Colo. 1988)); see Coors, 978 P.2d at 665. Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, a trial court is initially responsible for determining whether reasonable persons could differ on the question. See Culpepper, 877 P.2d at 883.

The level of outrageousness required to constitute extreme and outrageous conduct is "extremely high." Reigel v. SavaSeniorCare L.L.C., 292 P.3d 977, 990 (Colo. App. 2011) (citing Coors, 978 P.2d at 666. The claim is only "designed to create liability for a very narrow type of conduct." Green v. Qwest Servs. Corp., 155 P.3d 383, 385 (Colo. App. 2006). A single instance of conduct generally cannot rise to the level of outrageousness necessary to survive summary judgment. See City of Lafayette v. Barrack, 847 P.2d 136, 139 (Colo. 1993) ("[C]ourts are more likely to find conduct outrageous if it involves a course of conduct rather than a single incident"); see also Behunin v. Dow Chem. Co., 650 F. Supp. 1387, 1392 (D. Colo. 1986) (holding outrageous conduct normally requires a pattern of conduct).

"As to the first element, the level of outrageousness required to create liability is extremely high. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient. . . ." Archer v. Farmer Bros. Co., 70 P.3d 495, 499 (Colo. App. 2002), aff'd, 90 P.3d 228 (Colo. 2004). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Rugg v. McCarty, 476 P.2d 753, 756 (Colo. 1970) (quoting Restatement (Second) of Torts § 46, comment d at 73 (1965)).

### 2. Plaintiff has not alleged any specific conduct against Ms. Sanchez.

Plaintiff's allegations do not mention Ms. Sanchez by name nor do they allege with any specificity what Ms. Sanchez is alleged to have done. (See section II.A.2, supra, discussing Plaintiff's allegations against the "School Defendants" in lieu of specific allegations against Ms. Sanchez.) Because of the lack of any specific conduct alleged against Ms. Sanchez, no basis exists for this Court to conclude the extremely high "Outrageous!" threshold has been met. Nasious, 492

F.3d at 1163 (plaintiff must explain what each defendant did to her, when the defendant did it, how the defendant's action harmed her, and what specific legal right the defendant violated).

To the extent Plaintiff argues Ms. Sanchez' failure to report the alleged assault is the basis of her IIED/Outrageous Conduct claims, here too her claim must fail. First, Ms. Sanchez had no duty to report an assault that had already been reported and where the alleged assailants had already been arrested. Under Colo. Rev. Stat. § 19-3-304(1), "any person specified . . . in this section who has reasonable cause to know or suspect that a child has been subjected to abuse or neglect . . . shall immediately upon receiving such information report or cause a report to be made of such fact to . . . the local law enforcement agency."  It is undisputed Plaintiff's mother had informed the police and the hospital staff before she informed Ms. Sanchez. It is also undisputed D.L. and Z.L. were arrested the same day. Under these circumstances, Ms. Sanchez has no duty or obligation to report an alleged crime that had already been reported to multiple emergency professionals. See People v. Dist. Ct. for Colorado's Seventeenth Judicial Dist., 731 P.2d 652, 658 (Colo. 1987) (finding no violation of mandatory reporter law where alleged abuse had already been reported); see also Carricato, 413 P.3d 1280 at 1287 (citing Town of Minturn v. Tucker, 293 P.3d 581 (Colo. 2013)) ("The CGIA . . . and Child Protection Act ("CPA"), §§ 19-3-304 & 309, 'read together, provide that a public employee who is a mandatory reporter is immune from liability for reporting or failing to report child abuse unless his conduct is willful and wanton.'").  These allegations do not raise the specter of extreme and outrageous conduct. Destefano, 763 P.2d at 286 ("Outrageous conduct" is defined as conduct that is 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community'").

3.  *Ms. Sanchez did not intentionally or recklessly cause harm to Plaintiff.*

In addition, no evidence demonstrates Ms. Sanchez intended to or recklessly caused emotional distress. See, e.g., Culpepper, 877 P.2d at 882-83 (outrageous conduct requires defendant intentionally or recklessly cause severe emotional distress). To the extent any intent is alleged in the Second Amended Complaint, it is limited to the allegation "School Defendants intentionally failed to meet their obligations . . . when it [sic] intentionally refused to investigate Plaintiff's Title IX complaints . . . ." (See SAC at ¶ 210.) Plaintiff does not allege Ms. Sanchez, in particular, intentionally or recklessly cause severe emotional distress to Plaintiff.

4.  *Plaintiff does not sufficiently allege emotional distress.*

Plaintiff must demonstrate her own severe emotional distress or harm before this claim is viable. See Espinosa v. Sheridan United Tire, 655 P.2d 424, 425-26 (Colo. App. 1982). "[S]evere emotional distress" requires "highly unpleasant, mental reactions . . . and is so extreme that no person of ordinary sensibilities could be expected to tolerate and endure it." Squires ex rel. Squires v. Goodwin, 2012 WL 37508 at *22-23 (D. Colo. Jan. 9, 2012) (citing CJI-Civ. 23:1, 23:4 (CLE ed. 2011)); Coors, 978 P.2d at 666. "[E]ntirely conclusory" allegations of emotional distress do not suffice, including assertions such as "[t]he mental anguish, emotional distress and suffering, and the loss of enjoyment of life, suffered by [plaintiffs] as a result of [d]efendants' actionable conduct, has been and continues to be severe and extreme." Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co., 641 F. Supp. 2d 1167, 1179 n. 8 (D. Colo. 2009).

Here, Plaintiff alleges only "emotional distress was severe enough that it has resulted in illness or mental harm," without elaboration. (SAC at ¶ 213.) Her allegations thus fail to state a

claim as a matter of law. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

### C. Plaintiff's Sixth Cause of Action Against Ms. Sanchez (Negligent Infliction of Emotional Distress) Fails to State a Claim.

The tort of negligent infliction of emotional distress requires the defendant negligently violated a legal duty of care owed to the plaintiff. See Slovek v. Bd. of Cnty. Comm'rs, 697 P.2d 781, 783 (Colo. App. 1984) (plaintiff must have been subjected to an unreasonable risk of bodily harm because of the negligence of another), aff'd, 723 P.2d 1309 (Colo. 1986). "Recovery for emotional distress is permitted only if there are physical manifestations or mental illness. Examples of physical manifestations or mental illness include long-continued nausea or headaches or repeated hysterical attacks or mental aberrations." Colwell v. Mentzer Invs., Inc., 973 P.2d 631, 638, (Colo. App. 1998) (citing Towns v. Anderson, 579 P.2d 1163 (Colo. 1978)). The evidence presented must be sufficient to conclude defendant's negligence created an unreasonable risk of physical harm and caused plaintiff to be put in fear for her own safety, her fear must have had physical consequences or resulted in long-continued emotional disturbance, and plaintiff's fear must have been the cause of the damages she claimed. Scharrel v. Wal-Mart Stores, Inc., 949 P.2d 89 (Colo. App. 1997).

#### 1.  *Plaintiff has not alleged any specific conduct against Ms. Sanchez.*

Again, Plaintiff's allegations do not mention Ms. Sanchez by name nor do they allege with any specificity what Ms. Sanchez is alleged to have done. (See sections II.A.2, *supra*.) Furthermore, and as discussed above, Plaintiff fails to allege any specific action by Ms. Sanchez with regard to her emotional distress. Plaintiff's Second Amended Complaint only refers to conduct perpetrated by the "School Defendants" and does not allege any action by Ms. Sanchez

that caused the Plaintiff harm, psychologically or otherwise. <u>Robbins</u>, 519 F.3d at 1249-1250 (it is particularly important the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state). Because Plaintiff uses the collective term "School Defendants" rather than allege any specific conduct by Ms. Sanchez, Plaintiff's Sixth Cause of Action provides no basis for Ms. Sanchez to defend these claims. <u>Id.</u> at 1250 ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular . . . acts they are alleged to have committed.").

   2.   *Ms. Sanchez had no duty to protect Plaintiff.*

Here, dismissal is appropriate because Ms. Sanchez owed no legal duty upon which a negligence claim can be based. <u>See</u> <u>Biel v. Alcott</u>, 876 P.2d 60, 63 (Colo. App. 1993) (summarily affirming dismissal of negligent infliction of emotional distress claim after previously concluding no negligence-based legal duty existed) (<u>See</u> Section II.A.1, *supra*, discussing absence of duty owed by Ms. Sanchez.)

   3.   *Ms. Sanchez did not breach any duty to Plaintiff.*

Additionally, Plaintiff cannot demonstrate a breach where the only conduct alleged against Ms. Sanchez is that she was present during the alleged assault. <u>See</u> <u>Jones</u>, 854 P.2d at 1389-90 (rejecting affirmative duty of teachers and school officials to protect children from sexual abuse and finding no common law duty where defendants had no knowledge of sex abuse).

4190836.1

*4.   Ms. Sanchez is not the cause of Plaintiff's alleged injury.*

To the extent Plaintiff alleges her injury is premised on Ms. Sanchez allowing Plaintiff to drink, Plaintiff fails to demonstrate a nexus between her injury and the alcohol and drugs Plaintiff willingly consumed. "[A] proximate cause is defined as one that, in the natural and continuous sequence, produces [the plaintiff's] injury and without which the injury would not have happened." Hrabowskie v. United States, 2000 Colo. J. C.A.R. 4665 (10th Cir. 2000) (quotations omitted). If, however, "an unforeseeable event intervenes between the breach of duty, and that event directly causes the injury completely independent of the original breach, then the intervening cause becomes the supervening cause and breaks the causal nexus between the initial breach and the subsequent injury." Id. (citations omitted). When there is a supervening cause, any original negligence becomes only a remote cause or mere condition. Id. Plaintiff's allegations, taken as true, demonstrate Ms. Sanchez was not the cause of Plaintiff's injuries; rather, the alleged criminal assault by D.L. and Z.L. are the cause of her injuries. Plaintiff cannot maintain a negligence claim against Ms. Sanchez where the cause of her alleged injury is the unforeseeable criminal action of others. Id. Plaintiff's Sixth Cause of Action must be dismissed for failure to state a claim.

### D.   Plaintiff's Thirteenth Cause of Action Against Ms. Sanchez (Negligence) Fails Because the Colorado Dram Shop Act is Her Exclusive Remedy

Plaintiff's Thirteenth Cause of Action and second negligence claim alleges Ms. Sanchez was negligent in allowing minors to consume alcohol in Ms. Velasquez's house resulting in Plaintiff's sexual assault. (SAC ¶¶ 254-262). This claim is barred by the Colorado Dram Shop Act (the "Act"), which provides, in pertinent part:

> (4) (a) No social host who furnishes any alcohol beverage is civilly liable to any injured individual or his or her estate for any injury to the individual or damage to any property suffered, including any

> action for wrongful death, because of the intoxication of any person due to the consumption of such alcohol beverages, except when:
>
> (I)  It is proven that the social host knowingly served any alcohol beverage to the person who was under the age of twenty-one years or knowingly provided the person under the age of twenty-one a place to consume an alcoholic beverage; and
>
> (II)  The civil action is commenced within one year after the service.
>
> (b)  No civil action may be brought pursuant to this subsection (4) by the person to whom the alcohol beverage was served or by his or her estate, legal guardian, or dependent.

Colo. Rev. Stat. § 44-3-801 (4)(a)-(b). Before the enactment of Colo. Rev. Stat. § 44-3-801 (previously codified at Colo. Rev. Stat. § 12-47-801), the common law permitted negligence claims against alcohol beverage vendors. The Colorado Supreme Court, however, had never extended this kind of negligence claim to a social host. Rojas v. Engineered Plastics Designs, Inc., 68 P.3d 591, 592 (Colo. App. 2003). Since the promulgation of the Act, "the liability of alcohol vendors and social hosts has been strictly a creature of statute in Colorado," and the Act provides the exclusive remedy for the negligent provision of alcohol beverages by vendors or social hosts. Id. (citing Charlton v. Kimata, 815 P.2d 946, 948-49 (Colo. 1991)).

The Act provides, "in certain cases," the proximate cause of injuries inflicted by intoxicated persons is the consumption of alcoholic beverages rather than the sales, service, or provision of such beverages "except as otherwise provided in this section."  The legislative intent of the Act is to shift the responsibility for drinking alcohol from the vendor or social host to the consumer of alcoholic beverages. The "certain cases" are all cases except those where the Act provides a cause of action. Id. (citing Sigman v. Seafood Ltd. P'ship I, 817 P.2d 527 (Colo. 1991)) (Act precluded Plaintiff's suit for, *inter alia*, negligence and wrongful death); Westin Operator, LLC v. Groh, 347 P.3d 606 (Colo. 2015) ("The Act abolishes common law actions against . . . social hosts who sell

or serve alcoholic beverages and makes the liability of alcohol vendors a creature of statute");
Build It & They Will Drink, Inc. v. Strauch, 253 P.3d 302, 303 (Colo. 2011) (the Act "provides
the sole means for someone injured by an intoxicated person to obtain a remedy from the vendor
who sold or provided alcohol to the intoxicated person").

Thus, Colo. Rev. Stat. § 44-3-801(3) and (4) provide the only basis for a claim of
negligently selling, serving, or providing alcoholic beverages, because in all other cases it is the
consumption of alcoholic beverages that is the proximate cause of the injury caused by the
intoxicated person. Rojas, 68 P.3d at 592. Therefore, Plaintiff's second negligence claim, brought
as her Thirteenth Cause of Action and based on Plaintiff's consumption of alcohol, is barred by
the Act. See Charlton, 815 P.2d at 948-49 (prior version of statute precluded plaintiffs' common
law negligence claims against social host for furnishing alcoholic beverages). In fact, Plaintiff does
bring a claim under the Act, which is addressed in Section III below.

### E. Plaintiff's Fifteenth Cause of Action Against Ms. Sanchez (Civil Conspiracy) Fails to State a Claim

To establish a civil conspiracy, Plaintiff must show: (1) two or more persons; (2) an object
to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful
overt act; and (5) damages as to the proximate result. Jet Courier Serv., Inc. v. Mulei, 771 P.2d
486, 502 (Colo. 1989). An express agreement is not necessary; however, there must be some
indicia of an agreement. Saint John's Church v. Scott, 194 P.3d 475 (Colo. App. 2008). A court
will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must
be presented by the plaintiff. More v. Johnson, 568 P.2d 437, 440 (Colo. 1977). To state a
conspiracy claim, a complaint must set forth specific allegations. Tonkovich v. Kan. Bd. Of
Regents, 159 F.3d 504, 533 (10th Cir. 1998).

   1. *Plaintiff fails to allege any agreement between Defendants.*

To the extent a conspiracy claim can be gleaned from the Second Amended Complaint, there are no specific allegations showing an agreement or concerted action. Id. Instead, Plaintiff offers only superficial treatment of the Defendant's actions, and then offers a vague conclusion that the group acted "in concert" to violate Plaintiff's federal rights. (SAC at ¶¶ 274-75.) Plaintiff cannot demonstrate any unlawful overt act or any meeting of the minds. A "court will not infer the agreement necessary to form a conspiracy." Nelson v. Elway, 908 P.2d 102, 106 (Colo. 1995). There are no allegations in the complaint that Ms. Sanchez performed some intentional or overt action in furtherance of a conspiracy. A plaintiff "must reveal some indicia of an agreement sufficient to prove that the defendants consciously conspired and deliberately pursued a common plan or design that resulted in a tortious act." See Schneider v. Midtown Motor Co., 854 P.2d 1322, 1326-27 (Colo. App. 1992). Plaintiff asserts none. "It is not the defendant's or the Court's responsibility to guess at plaintiff's claims at the pleading stage." Robbins, 519 F.3d at 1248-49. The Court may not assume Plaintiff can prove facts she has not alleged or that the defendants have violated the laws in ways the plaintiff has not alleged. Id.

   2. *Plaintiff does not allege Ms. Sanchez' conduct was unlawful.*

A claim for civil conspiracy is a derivative cause of action; therefore, if the acts constituting the underlying wrong do not provide the basis for an independent cause of action, there is no cause of action for the conspiracy itself. Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C., 97 P.3d 140, 146 (Colo. App. 2003); Condo v. Conners, 271 P.3d 524 (Colo. App. 2010). As to Ms. Sanchez, Plaintiff only alleges: "Defendant Sanchez intentionally failed to report or investigate Plaintiff's assault despite, upon information and belief, bearing witness to the incident

and being a mandatory reporter." (SAC at ¶ 275(i).) As discussed above, however, the CGIA and

CPA "read together, provide that a public employee who is a mandatory reporter is immune from

liability for reporting or failing to report child abuse unless his conduct is willful and wanton."

See Carricato, 413 P.3d at 1287. Furthermore, there is no duty to mandatorily report abuse that has

already been reported to the police and where the alleged perpetrator has already been arrested.

People v. Dist. Ct. for Colorado's Seventeenth Judicial Dist., 731 P.2d 652, 658 (finding no

violation of mandatory reporter law where alleged abuse had already been reported). In sum, Ms.

Sanchez' underlying conduct was not illegal nor actionable and therefore Plaintiff's civil

conspiracy claim fails.

### III.   Plaintiff's Fourteenth Cause of Action Against Ms. Sanchez (Violation of Colorado Dram Shop Act) Fails as a Matter of Law

Plaintiff's claim alleging Ms. Sanchez violated the Colorado Dram Shop Act fails because

(1) it is untimely; (2) Plaintiff has no standing to bring this cause of action under the Act, and; (3)

Plaintiff has not alleged Ms. Sanchez exercised control over the alcohol she consumed.

Plaintiff omitted the relevant portion of the Act in her Second Amended Complaint. (See

SAC at ¶ 264). Importantly, the Act prohibits civil actions commenced more than one year after

the service of alcohol and prohibits the person who ingested the alcohol from bringing a claim.

Colo. Rev. Stat. § 44-3-801(4)(a)-(b); see also excerpted portion of the Act at Section II.D, *supra*.

*1.   Plaintiff's claim is untimely and must be dismissed.*

Colo. Rev. Stat. § 44-3-801(4)(a)(II) requires a plaintiff to bring her claim within one year

from when the alcohol was served. Id.; see also Estate of Stevenson v. Hollywood Bar, 832 P.2d

718 (Colo. 1992) (one-year statute of limitation period within which to file a claim under this

section is not unreasonably limited in duration). Here, Plaintiff alleges she consumed alcohol "on

4190836.1

or about the evening of July 7 and early morning of July 8, 2017." (SAC at ¶¶ 27, 30, 34.)  Plaintiff

did not file her Original Complaint until March 13, 2019 -- more than one year and eight months

later. (See generally SAC). Therefore, Plaintiff's Dram Shop claim is untimely and must be

dismissed. Boyer v. Cordant Technologies, 316 F.3d 1137, 1140 (10th Cir. 2003); Aldrich v.

McCulloch Props., Inc., 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980) ("While the statute of limitations

is an affirmative defense, when the dates given in the complaint make clear that the right sued

upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling.").

  2. *Plaintiff does not have standing under the Act.*

Colo. Rev. Stat. § 44-3-801 (4)(b) provides, "[n]o civil action may be brought pursuant to

this subsection (4) by the person to whom the alcohol beverage was served or by his or her estate,

legal guardian, or dependent."  Here, Plaintiff brings a claim based on the alcoholic beverage she

voluntarily consumed. (SAC ¶¶ 29-31, 34.)  By the plain language of the Act, Plaintiff's claim

must be dismissed because Plaintiff is the person who consumed the alcohol

  3. *Ms. Sanchez did not provide or exercise control over the alcohol Plaintiff consumed.*

Plaintiff's bare allegation Ms. Sanchez "and Defendant Velazquez knowingly served

alcoholic beverages to persons under the age of twenty-one and/or knowingly provided persons

under the age of twenty-one a place to consume alcoholic beverages," (SAC at ¶ 268), is

insufficient to state a claim under the Act as a matter of law. Importantly, Plaintiff had possession

of the alcohol before they arrived at Ms. Velasquez' home. (Id. at ¶ 30.)

Plaintiff must demonstrate actual knowledge of the defendant, not mere constructive

knowledge. Przekurat v. Torres, 428 P.3d 512, 514 (Colo. App. 2018). Even if actual knowledge

were established, Plaintiff would also have to demonstrate Ms. Sanchez bought or exercised

control over the alcohol. <u>Forrest v. Lorrigan</u>, 833 P.2d 873, 875 (Colo. App. 1992). In <u>Forrest</u>, the

Colorado Court of Appeals affirmed summary judgment for a parent who provided a venue for

teenagers to consume alcohol. <u>Id.</u> at 875. The court held:

> as a matter of law, the defendants' acts were not sufficient to
> constitute willful and knowing service to minors. Accordingly, we
> hold that the statutory requirement of willfully and knowingly
> serving is met only when a social host ***has control over or takes an
> active part in*** supplying a minor with alcohol, and that providing a
> home at which alcohol is consumed by minors, without more, does
> not create liability under our statutes.

<u>Id.</u> (emphasis added). Although <u>Forrest</u> was decided under an earlier version of the statute the

reasoning still applies. Further, Plaintiff makes no specific allegations concerning the

circumstances under which Ms. Sanchez is alleged to have given Plaintiff, D.L. or Z.L. alcohol or

in what quantities; and her bare assertion that Ms. Sanchez knowingly served Plaintiff alcohol is

not sufficient to state a claim. Her allegations thus fail as a matter of law. <u>Iqbal</u>, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice"). For the foregoing reasons, this Claim must be dismissed.

### IV.    A <u>Trinity</u> Hearing May Be Necessary to Determine Whether Ms. Sanchez Acted Willfully and Wantonly

To overcome Ms. Sanchez' immunity under the CGIA, Plaintiff must demonstrate Ms.

Sanchez acted in a willful and wanton manner and thereby caused Plaintiff's injuries. Where there

are disputed factual issues underlying the question of whether a defendant acted in a willful and

wanton manner, the Court should conduct a <u>Trinity</u> hearing to determine whether it has subject

matter jurisdiction. <u>Fogg v. Macaluso</u>, 892 P.2d 271, 276 (Colo. 1995); <u>Trinity</u>, 848 P.2d at 924.

<u>Trinity</u> hearings "include all issues of immunity, including facts not directly disputed by the

parties." <u>City & Cnty. of Denver v. Dennis ex rel. Heyboer</u>, 418 P.3d 489, (Colo. 2018); <u>but see</u>

29

<u>Medina</u>, 35 P.3d at 452 ("[I]f all relevant evidence is presented to the trial court, and the underlying facts are undisputed, the trial court may decide the jurisdictional issue as a matter of law. . . .").

Here, if the Court determines Plaintiff's allegations of willful and wanton conduct are insufficient, Plaintiff's Fourth, Fifth, Sixth, Seventh, and Fifteenth Causes of Action against Ms. Sanchez must be dismissed as a matter of law. If, however, the Court concludes the facts underlying Plaintiff's allegations of willful and wanton conduct are sufficient to maintain her claims, Ms. Sanchez requests the Court conduct a <u>Trinity</u> hearing to evaluate the facts and determine whether Ms. Sanchez acted in a willful and wanton manner. <u>Trinity</u>, 848 P.2d at 924; <u>Carricato</u>, 413 P.3d at 1286.

## V.  INCORPORATION OF OTHER DEFENDANTS' ARGUMENTS

Pursuant to Fed. R. Civ. P. 10(c), Ms. Sanchez incorporates by reference all the applicable arguments and authorities contained in the pleadings filed by the other Defendants in this matter.

## <u>CONCLUSION</u>

Based on the foregoing arguments and authorities, Ms. Sanchez respectfully requests this Court dismiss all of Plaintiffs' claims against her in their entirety with prejudice and enter all other and further relief as this Court deems just and appropriate.

Respectfully submitted this 27th day of June 2019.

s/ *Aaron J. Thompson*
Aaron J. Thompson, Esq.
Gillian Dale, Esq.
HALL & EVANS LLC
1001 17th Street Suite 300
Denver, CO 80202
Tel: 303-628-3300; Fax: 303-628-3368
thompsona@hallevans.com; daleg@hallevans.com
**ATTORNEYS FOR DEFENDANT
TRISH SANCHEZ**

4190836.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of June 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following, and via U.S. Mail as indicated below:

<table>
<tr>
<td>

**Michael J. Mirabella, Esq.**
mmirabella@ckbrlaw.com
**[Attorney for Plaintiff]**

</td>
<td>

**D. L.**            **(Via U.S. Mail)**
16852 CR 18.8
P.O. Box 65
Weston, CO 81091
**[Pro Se Defendant]**

</td>
</tr>
<tr>
<td>

**Andrew T. Miltenberg, Esq.**
**Gabrielle M. Vinci, Esq.**
amiltenberg@nmllplaw.com
gvinci@nmllplaw.com
**[Attorneys for Plaintiff]**

</td>
<td>

**Z.L.**            **(Via U.S. Mail)**
20977 State Highway 12
Weston, CO  81091
**[Pro Se Defendant]**

</td>
</tr>
<tr>
<td>

**Elizabeth S. Francis, Esq.**
**Mary G. Whalen, Esq.**
gwhalen@celaw.com
efrancis@celaw.com
**[Attorneys for Defendants Primero**
**Reorganized School Dist. RE-2;**
**Board of Education of the Primero**
**Sch. Dist.; William Naccarato]**

</td>
<td>

**Debra Velasquez**      **(Via U.S. Mail)**
P.O. Box65
Weston, CO  81091
**[Pro Se Defendant]**

</td>
</tr>
</table>

s/ *Marlene Wilson, Legal Assistant to*
Aaron J. Thompson, Esq.
Gillian Dale, Esq.
of HALL & EVANS, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Phone: (303) 628-3300
Fax: (303) 628-3368
thompsona@hallevans.com
daleg@hallevans.com
**ATTORNEYS FOR DEFENDANT**
**TRISH SANCHEZ**

4190836.1