IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No.: 19-cv-00746

JANE DOE

                        Plaintiff,

   v.

BOARD OF EDUCATION OF THE PRIMERO SCHOOL DISTRICT RE-2; WILLIAM NACCARATO, Individually and In His Official Capacity as an agent of the Primero reorganized School District RE-2; TRISH SANCHEZ, Individually and in Her Official Capacity As agent of the Primero Reorganized School District RE-2; D.L., a minor; Z.L., a minor; and DEBRA VELASQUEZ,

                        Defendants.

_____

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT DEBRA VELASQUEZ'S MOTION FOR SUMMARY JUDGMENT**

     Plaintiff Jane Doe ("Plaintiff") submits this memorandum of law in opposition to Defendant Debra Velasquez's ("Velasquez's") Motion for Summary Judgment (ECF 143). Plaintiff contends that there are disputed issues of material fact that preclude summary judgment on Plaintiff's Eighth Cause of Action (Negligence) and Ninth Cause of Action (Violation of the Colorado Dram Shop Act).

**Response to Statement of Undisputed Material Facts**

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

1

7. Admitted. However, Velasquez maintained an outdoor fridge on the front porch of her property where she occasionally kept beer, specifically Corona, which was not secured or locked. (Ex. D, Deposition of Trish Sanchez, pp. 35:25-36:13). Velasquez testified that the teenagers took Corona from Velasquez's outside fridge. (Ex. C, Deposition of Debra Velasquez, p. 56:4-57:1). ZL testified that the teenagers accessed Velasquez's outside fridge to keep and get the beer consumed on the night of the assault. (Ex. F, Deposition of Zander Lamorie, pp. 55:7-10; 75:10-76:2).

8. Admitted. However, alcohol and drugs were consumed on Velasquez's property under Velasquez's supervision in an area that Velasquez could hear from inside the house and that she testified she physically visited while the group of teenagers were present. (Ex. Ex. D, pp. 19:22-20:14, 30:12-25, 36:16-24, 38:9-11).

9. Admitted.

10. Admitted. However, the outside area where the teenagers built the fire and continued to consume alcohol and smoke marijuana was a part of Velasquez's property. (Ex. D, pp. 19:22-20:14; Ex. C, 30:12-16).

11. Admitted. However, Velasquez testified that she spoke with the group, which included Plaintiff, multiple times throughout the evening, including in the area where the group was consuming alcohol and smoking marijuana. (Ex. C, pp. 30:10-25; 36:16-24; 38:25-39:3).

12. Admitted. However, Plaintiff testified as to her knowledge of various instances of alleged sexual misconduct involving DL and ZL. (Ex. B, Plaintiff's Deposition, pp. 274:14-276:20; 278:10-279:11).

**Statement of Additional Undisputed Material Facts**

1. Plaintiff alleges that she was sexually assaulted by two male teenagers, Defendant D.L. ("D.L") and Defendant Z.L. ("Z.L."), on the night of July 7, 2017 and/or early morning hours of July 8, 2017. (Ex. A, Third Amended Complaint, ¶¶ 20-61).

2. The sexual assault occurred in a bedroom inside Velasquez's home. (*Id.*).

3. Prior to the sexual assault, Plaintiff hung out by a nearby river bottom in Weston with DL, ZL, and her friends Jasmine, Joey, Michael, and Vince. (*Id.*; Ex B, pp. 9:8-10:12).

4. All of the individuals that were part of the group were teenagers under the age of majority. (Ex. A, ¶ 33).

5. While at the river, Plaintiff and the group of teenagers drank beers, specifically Corona, and smoked marijuana. (*Id.* ¶ 30; Ex. B, pp. 10:22-11:7; Ex. E, Deposition of Darius Lopez, pp. 42:6-16, 48:2-11; 51:14-20).

6. After visiting at the river bottom, the group of teenagers then decided to go to Velasquez's home and hang out on her property. (Ex. A, ¶¶ 32-34; Ex. F pp. 71:4-10; 75:23-76:6).

7. The group arrived to Velasquez's home at approximately 10:30 p.m. (Ex. E, p. 61:11-13).

8. Once at Velasquez's home, the group built a fire on her property by the basketball hoop. (Ex. E, pp. 61:19-62:6).

9. The group of teenagers continued to smoke and drink on Velaquez's property by the basketball hoop. (Ex. E pp. 64:2-10; 65:14-23).

10. Velasquez testified that when her grandchildren and their friends were at her house, they were always supervised. (Ex. C, p. 19:5-16).

3

11. Velasquez testified as to ways that she supervised the teenagers on the night of the assault, including, allegedly, going outside to the area where the teenagers were hanging out on her property multiple times, and speaking to the teenagers before they went to bed. (Ex. C, pp. 30:12-22, 36:16-24; 40:24-41:5; 41:13-42:2).

12. Velasquez further testified that she intervened at twice during the night when Plaintiff allegedly caused a disturbance. (Ex. C, pp. 44:3-10, 45:15-24, 46:12-47:12).

13. Velasquez testified that she never saw Plaintiff enter the bedroom with DL and ZL on the night of the assault. (Ex. C, p. 49:13-23).

14. Velasquez testified that at no point during the evening did anything give her the impression that any of the teenagers were drunk or high. (Ex. C, pp. 31:7-15, 37:20-39:16, 40:24-41:12).

15. Velasquez testified that she realized the teenagers had drunk alcohol when she saw empty beer bottles on her property the next morning. (Ex C, pp. 53:16-54:5, 56:2-57:1).

16. Following the sexual assault, criminal charges were brought against DL and ZL. As part of the criminal proceedings against DL and ZL, a preliminary hearing was held where Plaintiff, Velasquez, and others testified under oath. (Ex. G, preliminary hearing transcript, generally; Ex. C, p. 76:7-11).

17. Velasquez confirmed that all of her testimony at the preliminary hearing was true and accurate. (Ex. C, p. 76:7-22).

18. There is contradicting testimony regarding Velasquez's interactions with the group of teenagers on the day and night of the assault.

19. Velasquez testified that, on the day of the assault, she saw and spoke with DL, ZL, Plaintiff, and others when they arrived to her home around 2:00 pm. (Ex. C, pp. 28:1-29:5).

20. Velasquez further testified that, throughout that evening, she spoke to the group of teenagers around 8:00 pm that evening around the fire pit by her basketball hoop, spoke to the group of teenagers around 10:30 pm around the fire pit by her basketball hoop to tell them to go to bed, spoke to the group as they came in her home to go to bed, and addressed her granddaughter twice when Plaintiff was allegedly being disruptive. (Ex. C, pp. 29:12-31:6, 36:16-24, 38:25-39:3, 40:24-42:2, 44:3-10, 45:15-24, 46:12-47:12).

21. In contrast, DL testified that he and the group arrived to Velasquez's home around 10:30 p.m. and he did not see or interact with Velasquez. (Ex. E, p. 61:11-62:11).

22. DL testified that when he entered Velasquez's home to go to bed the evening of the assault, Velasquez was asleep on the couch. (Ex. E 78:8-21).

23. Seeing Velasquez asleep on the couch was the first time DL saw her that evening. (Ex. E p. 77:6-13).

24. Plaintiff testified that she did not see Velasquez until the evening of the assault and was in a completely different town prior to arriving in Weston on the night of July 7, 2017 (Ex. B, pp. 9:8-10:12).

25. There is contradicting testimony regarding Velasquez's enforcement of the rules at her home.

26. Velasquez testified that she maintained rules for when her grandchildren and their friends were at her home which included the prohibition of drinking alcohol on her property. (Ex. C, pp. 19:5-23, 20:24-21:25).

27. One of Velasquez's rules included that if a teenager wanted to spend the night at her home, the child had to have permission from his or her parent(s) that she could confirm, and boys and girls had to sleep in separate rooms. (Ex. C, pp. 21:6-25).

28. Did not always enforce the rules of her house and did not enforce all of them on the night of the assault. (Ex. C, pp. 34:25-36:15).

29. ZL testified that Velasquez never told him the rules of her house and never told him any rules regarding the consumption of alcohol at her house. (Ex. F, p. 55:22-25).

30. ZL testified that he never tried to hide the fact that they were drinking when he would consume alcohol at Velasquez's home and/or on Velasquez's property. (Ex. F, pp. 56:23-57:2).

31. There is contradicting testimony regarding Velasquez's knowledge of the teenager's consumption of alcohol on the night of the assault.

32. At her deposition, Velasquez testified that she was able to hear the group of teenagers outside from where she was inside the home. (Ex. C, p. 38:9-11).

33. At her deposition, Velasquez testified that she visited the area on her property where the group was hanging out and consuming alcohol and smoking marijuana, including right before the group of teenagers retired to bed for the evening. (Ex. C, 30:10-25; 36:16-24; 38:9-39:3).

34. At her deposition, Velasquez testified that there was never any indication that anyone in the group of teenagers were drinking or smoking on the night of the assault. (Ex. C, pp. 31:7-15, 37:20-39:16, 40:24-41:12).

35. Velasquez also testified that there were multiple empty beer bottles in the area on her outside property where the group had been hanging out. (Ex C, pp. 53:16-54:5, 56:2-57:1).

36. ZL testified that he never tried to hide the fact that they were drinking when he would consume alcohol at Velasquez's home and/or on Velasquez's property. (Ex. F, p. 56:25-57:2).

37. At her deposition, Velasquez testified that she did not know that any of the members of the group were drinking alcohol or smoking marijuana until the morning after the assault. (Ex. C, pp. 31:7-15, 37:20-39:16, 40:24-41:12, 53:16-54:5, 56:2-57:1).

38. However, Velasquez testified at the preliminary hearing that she "kind of figured" that the group of underage teenagers were drinking alcohol on the night the group visited at her home. (Ex. G, p. 73:2-14).

39. There is contradicting testimony regarding the source of the alcohol the group of teenagers consumed on the night of the assault.

40. Velasquez maintained an outdoor fridge on the front porch of her property where she occasionally kept beer, specifically Corona, which was not secured or locked. (Ex. D, pp. 35:25-36:13).

41. Velasquez testified that the teenagers took Corona from Velasquez's outside fridge. (Ex. C, pp. 56:4-57:1).

42. ZL testified that the teenagers accessed Velasquez's outside fridge to keep and get the beer consumed on the night of the assault. (Ex. F, pp. 55:7-10; 75:10-76:2).

43. There is contradicting testimony regarding Velasquez's knowledge of Plaintiff's sleeping arrangements on the night of the assault.

44. At her deposition, Velasquez testified that she observed the girls and boys separate into two separate bedrooms to sleep on the night of the assault. (Ex. C, pp. 41:24-42:2).

45. Velasquez further testified at her deposition that she saw Plaintiff enter the girls' bedroom for the evening and that Plaintiff slept in the girls' bedroom and never entered the boys' bedroom on the night of the assault. (Ex. C, p. 47:13-23).

46. Velasquez testified under oath during the preliminary hearing that she saw Plaintiff enter the boys' bedroom for the evening on the night of the assault. (Ex. G p. 75:22-76:2).

## ARGUMENT

### I. Standard of Review

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment "is considered a drastic relief to be applied with caution." *Pittsburg & Midway Coal Min. Co. v. Yazzie,* 909 F.2d 1387, 1427 (10th Cir. 1990). When applying this standard, the court must view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Cobos,* 841 F.3d 895, 900 (10th Cir. 2016) (citations and quotations omitted). "[T]he movant must demonstrate entitlement (to summary judgment) beyond a reasonable doubt and if an inference can be deduced from the facts whereby the non-movant might recover, summary judgment is inappropriate." *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n.1 (10th Cir. 1981) (internal quotations omitted).

Further, at the summary judgment stage, the court "may not make credibility determinations or weigh the evidence," and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.,* 245 F.3d 1172, 1175 (10th Cir. 2001) (internal citations omitted).

### II. There Are Disputed Issues of Material Fact That Preclude Summary Judgment on Plaintiff's Eighth Cause of Action (Negligence)

#### A. The Court Should Find Velasquez Owed Plaintiff a Duty of Care

Velasquez asserts that Plaintiff's Eighth Cause of Action for negligence should be dismissed because (i) Velasquez did not owe any duty to Plaintiff on the night of the assault and,

8

(ii) even if Velasquez owed a duty of care to Plaintiff, Plaintiff's damages do not stem from any breach of that duty by Velasquez. Velasquez's arguments should be rejected.

To establish a claim of negligence, Plaintiff must demonstrate "(1) the existence of a legal duty by the defendant to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach of duty caused the injury." *Raleigh v. Performance Plumbing and Heating*, 130 P.3d 1011, 1015 (Colo. 2006).

A duty of care arises when there is a "foreseeable risk of injury to others from a defendant's failure to take protective action to prevent the injury." *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992). A defendant owes a duty to act "when it is reasonably foreseeable that the failure to act will create an unreasonable risk of harm to another." *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1166 (Colo. 2002). With respect to foreseeability, the inquiry is not whether a *specific* injury is foreseeable; rather, the relevant inquiry is whether *an* injury is foreseeable. *See Build It and They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 306 (Colo. 2011). Thus, "so long as it is foreseeable that *an* injury will occur, a defendant may be liable for the plaintiff's injuries even when the injury is directly produced by the 'intentionally tortious or criminal acts of a third party.'" *Build It and They Will Drink, Inc. v. Strauch*, 253 P.3d at 306 (*quoting Largo Corp. v. Crespin*, 727 P.2d 1098, 1103 (Colo. 1986) (emphasis added)).

"Whether a legal duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree it exists." *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d at 1320 (*quoting Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987)).

The court may look to a number of factors when determining whether a duty of care should be imposed. Such factors include "the risk involved, the foreseeability and likelihood of injury …,

9

the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the [defendant]." *Taco Bell, Inc. v. Lannon*, 744 P.2d at 46 (*quoting Smith v. City and Cty. of Denver*, 726 P.2d 1125, 1127 (Colo. 1986). The court may also consider other factors as relevant and applicable to the individual case. *See Taco Bell, Inc.*, at 46. As the Court already opined in its motion to dismiss decision, Velasquez may have owed a duty of care to Plaintiff simply by being an adult chaperone at her home on the night of the assault. *See* Dkt. No. 94 at p. 15 (*citing Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316 (Colo. 1992)).

Here, Plaintiff maintains that the aforementioned factors weigh in favor of finding that Velasquez owed a duty of care to Plaintiff by virtue of being the homeowner and chaperone of the gathering held at her home on the night of the assault. With respect to the risk involved and the foreseeability and likelihood of injury, although Velasquez argues that she was not aware of any risk of sexual assault specifically, as stated above, the risk and foreseeable injury to Plaintiff did not have to be, specifically, a rape. *See Build It and They Will Drink, Inc. v. Strauch*, 253 P.3d at 306. As the Court noted in its motion to dismiss decision "drugs, alcohol, and teenage aggression are a dangerous mix" and specific laws have been enacted to address the inherent risk that arises when those factors are combined with each other. *See* Dkt. No. 94 at p. 16. Here, the record is undisputed that Velasquez knew that a group of teenagers, including minor aged members of her own family, were staying on her property late at night and that boys and girls would be sleeping at her home for the evening. Moreover, the record indicates that Velasquez "figured' that the group had been drinking and saw Plaintiff enter the bedroom with DL and ZL. Thus, the risk of harm was reasonably high and Velasquez should have known that there was a likelihood of harm to Plaintiff (and/or others in the group) if she did not properly supervise the group's actions.

With respect to the magnitude of the burden of guarding against injury or harm and the consequences of placing the burden upon the defendant, Velasquez argues that the burden to protect Plaintiff against a sexual assault would have been tremendous and posits that in order to do so, she would have had to deprive herself of sleep that entire evening and checked each bedroom over and over to monitor the teenagers' activities. In actuality, however, the burden could have been far less and possibly only required Velasquez to do as she claims she did: supervise the teenagers by going out to the area where they were hanging out on her property, enforce the rules she claimed to have for her home, and ensure that the girls and boys stayed in separate bedrooms. Such measures can hardly be considered burdensome or unduly cumbersome as Velasquez herself seems to maintain that she was able to do them[1]. Finally, the consequences of placing the aforementioned burden to properly supervise minor aged guests in her home is minimal at best; the consequences are, at most, the inconvenience of having to oversee potentially raucous teenagers.

Velasquez's duty to Plaintiff on the night of the assault "is based on the standard of care owed by a reasonable person in [Velasquez's] position." *Scott v. Matlack, Inc.*, 39 P.3d 1166 (*citing Bayly, Martin, & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 242 (Colo. 1987)). Based on the above-described circumstances, the court should find that a reasonable person in Velasquez's position would have owed a duty of care to Plaintiff as a minor-aged guest in her home. Respectfully, to find otherwise signifies the court's policy and opinion that minor guests are not entitled to protection from homeowners whose property they visit as a welcomed guest. *See Connes* at 1320 (*quoting Univ. of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo. 1987)). (opining

---

[1] As explained *infra*, there is a question of fact as to the steps taken by Velasquez to supervise the teenagers on the night of the assault.

that the court's decision whether or not a duty exists is "'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection.'").

### B. There Are Issues of Fact Regarding Defendant's Breach of the Duty of Care to Plaintiff and the Nexus Such Breach has to Plaintiff's Damages

Velasquez argues that, even if she owed a duty of care to Plaintiff (which Plaintiff maintains she did), Plaintiff's damages were not caused by any breach of that duty but rather by the sexual assault perpetrated against Plaintiff by DL and ZL. Summary judgment would be inappropriate on Plaintiff's eighth cause of action because there are material issues of fact regarding Velasquez's breach of a duty to Plaintiff and the damages such breach caused to Plaintiff.

There is contradicting evidence, specifically sworn testimony, in the record that raises an issue of fact as to the steps Velasquez took to supervise the group of teenagers, as well as Velasquez's knowledge of the consumption of alcohol on her property by the teenagers.

With respect to Velasquez's knowledge of the consumption of alcohol by the teenagers on her property, Velasquez testified that she physically visited the area on her property where the teenagers were hanging out when they first arrived in the evening and at the end of the night. She further testified that there was never any indication that the group of teenagers were drinking alcohol or smoking marijuana. However, Velasquez also testified in court that she "kind of figured" that the group of teenagers were drinking alcohol on the night in question while at her home. She also testified that she saw beer bottles around the area where the teenagers were hanging out the next morning. Moreover, the teenagers involved in the actual drinking on Velasquez's property, DL and ZL, testified that nothing was done to hide the fact that they were drinking on Velasquez's property. They further testified that they had no interactions with Velasquez on the

12

night of the assault, except for DL, who testified that the only time he saw him grandmother was when she was asleep on the couch at the end of the evening.

Under these set of facts, a reasonable juror could find that it was improbable that Velasquez would twice be at the scene of the drinking and smoking on the night it was occurring and never see any evidence of the alcohol or drug consumption until the next morning. Moreover, coupled with Velasquez's sworn testimony that she figured the group was drinking alcohol, a reasonable juror could find that Velasquez knew the underage teenagers were, at the very least, drinking alcohol on the night of the assault.

With respect to Velasquez's steps to supervise the group of teenagers, at her deposition, Velasquez, who stated that teenagers were always supervised while at her home, testified that: (i) she maintained and enforced rules in her home, including conditions on when teenagers could sleep over her home and a strict prohibition on underage drinking and smoking; (ii) she physically visited the area on her property where the teenagers were hanging out when they first arrived in the evening; (iii) she physically visited the area on her property where the teenagers were hanging out at the end of the night to tell the group to go to sleep; (iv) spoke to the group of teenagers as they entered her home at the end of the night; (v) intervened at least twice after bedtime when Plaintiff allegedly became disruptive; and (vi) ensured that the boys and girls slept in separate rooms in her home. In contrast, however, (i) ZL testified that he never saw Velasquez after the group returned to her home in the evening; (ii) DL testified that the only time he saw Velasquez when he went inside the house to go to bed at which time she was asleep at the couch; and (iii) Velasquez herself testified in court prior to her deposition that she saw Plaintiff enter the bedroom with DL and ZL, both male teenagers.

13

Based on the foregoing, a reasonable juror could find that Velasquez knew that the group of underage teenagers were drinking alcohol at her home and on her property, and could further find that Velasquez did not properly supervise the group of teenagers and minimize risk to the group's members on the night of the assault thereby failing to meet her duty of care to Plaintiff.

Velasquez lastly argues that Plaintiff's damages, including the emotional damages she has suffered, cannot be found to be caused by her but rather, must be found to be caused by the sexual assault. However, it is well settled that a defendant may be liable for the plaintiff's injuries even when the injury is directly produced by the 'intentionally tortious or criminal acts of a third party.'" *Build It and They Will Drink, Inc. v. Strauch*, 253 P.3d at 306 (*quoting Largo Corp. v. Crespin*, 727 P.2d 1098, 1103 (Colo. 1986)).

Here, a jury could find that Velasquez's failure to properly supervise the group of teenagers despite her knowledge that she knew (or "figured") that the underage teenagers were drinking alcohol and her observation of Plaintiff entering the bedroom at night with DL and ZL, proximately led to Plaintiff's sexual assault and the resulting damages to Plaintiff. Accordingly, Velasquez's motion to dismiss Plaintiff's eighth cause of action should be denied.

### III. There Are Disputed Issues of Material Fact That Preclude Summary Judgment on Plaintiff's Ninth Cause of Action (Colo. Dram Shop Act)

Plaintiff brings her Ninth Cause of Action for Velasquez's violation of Colorado's Dram Shop Act, Colo. Rev. Stat. at § 44-3-801 (the "Act"). The Act provides, in relevant part:

> (4)(a) No social host who furnishes any alcohol beverage is civilly liable to any injured individual or his or her estate for any injury to the individual or damage to any property suffered, including any action for wrongful death, because of the intoxication of any person due to the consumption of such alcohol beverages, except when…
>
> (I) It is proven that the social host knowingly served any alcohol beverage to the person who was under the age of twenty-one years

14

> or knowingly provided the person under the age of twenty-one a place to consume an alcoholic beverage.

Colo. Rev. Stat. at. § 44-3-801(4)(a)(I).

Preliminarily, Velasquez argues that Plaintiff is precluded from asserting a claim under the Act because she was served alcohol[2]. Plaintiff contends that preclusion would be inappropriate. The Act provides, in relevant part, that an individual who was served alcohol is precluded from bringing suit under the Act. *See* Colo. Rev. Stat. at. § 44-3-801(4)(b). However, courts interpreting this provision, and those identical to it found elsewhere in the Act, apply the preclusion where the harm alleged amounted to harm to the person who was served caused by the service of alcohol to the person who was harmed. *See Sigman v. Seafood Lts. Partnership I*, 817 P.2d 527 (Colo. 1991) (applying Section 3(b) of the Act to preclude a claim brought on behalf of a deceased plaintiff in light of the fact that he would have been precluded from bringing the claim himself under the Act). Here, however, Plaintiff seeks relief for Velasquez's violation of the Act vis-à-vis Velasquez's provision of a place to consume alcohol to the underage teenagers, DL and ZL. Thus, Plaintiff maintains that Section 4(b) of the Act was not intended to bar claims such as Plaintiff's, who was harmed by another individual(s).

In order to hold Velasquez liable under the Act as a social host, Plaintiff must demonstrate that Velasquez knew the group of teenagers, including Plaintiff, DL, and ZL were underage and knowingly served alcohol or knowingly provided a place for alcohol to be consumed to the underage group members. *See Przekurat v. Torres*, 428 P.3d 512, 515 (Colo. 2018).

---

[2] Notably, Velasquez argues in one instance that Plaintiff was not served alcohol by Velasquez and in another instance that Plaintiff cannot maintain her claim because Plaintiff was served alcohol.

First, it is undisputed that Plaintiff and the group members were underage on the night of the assault and that Velasquez was aware of that fact. Second, it is undisputed that the teenagers consumed alcohol on Velasquez's property. With respect to what Velasquez actually knew or did not know, at a minimum, issues of fact exist as to Velasquez's provision of alcohol to the underage teenagers and/or Velasquez's provision of a place for the underage teenagers to consume alcohol.

Velasquez argues that the teenagers' consumption of alcohol at her home was unknown to her and therefore, she could not have *knowingly* provided a place for the consumption of alcohol to the underage teenagers. However, as explained *supra*, there is a question of fact as to Velasquez's knowledge of the consumption of alcohol by the teenagers on her property. To reiterate, despite testifying at her deposition that she had no knowledge of the consumption of alcohol by the teenagers, Velasquez testified in court that she "figured" the teenagers were drinking alcohol. Moreover, Velasquez's testimony at her deposition does not logically align with the testimony of the teenagers who were present that night, and raises a credibility issue and issue of fact that can only be assessed and decided by the jury.

Considering the foregoing, a reasonable juror could find that Velasquez knew that the teenagers were underage, knew the teenagers were consuming alcohol, and therefore knew that she had provided a place for the underage teenagers to consume alcohol. Accordingly, Velasquez's motion to dismiss Plaintiff's Ninth Cause of Action should be denied.

## Conclusion

Based on the foregoing, Plaintiff respectfully requests that this Court deny Velasquez's Motion for Summary Judgment in its entirety, and grant Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 27, 2021

                              Respectfully Submitted,

                              *s/Michael J. Mirabella*
                              Michael J. Mirabella, Esq.
                              Campbell, Killin, Brittan, & Ray, LLC.
                              270 St. Paul Street, Suite 300
                              Denver, Colorado 80206
                              Tel: 303-394-7209
                              mmirabella@ckbrlaw.com


                              *s/Gabrielle Vinci*
                              Andrew T. Miltenberg, Esq.
                              Gabrielle M. Vinci, Esq.
                              Nesenoff & Miltenberg, LLP
                              363 7th Ave., Fifth Floor
                              New York, NY 10001
                              Tel: 212-736-4500
                              amiltenberg@nmllplaw.com
                              gvinci@nmllplaw.com


                              *Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing motion complies with the type-volume limitation set forth in Honorable Judge Domenico's Practice Standard III(A)(1) and contains 5,051 words.

                */s/ Gabrielle M. Vinci*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2021, I caused the foregoing to be electronically filed with the Court's electronic filing system (CM/ECF) which will automatically cause a notification to be sent to the following counsel of record:

Janice C. Orr, Esq.
Law Office of Janice C. Orr, P.C.
88 Inverness Circle East
Suite B-105
Englewood, CO 80112
*Counsel for Defendant Debra Velasquez*

Elizabeth Spellmire Francis, Esq.
May Gwyneth Whalen, Esq.
Caplan & Earnest, LLC
3107 Iris Avenue, Suite 100
Boulder, CO 80301
*Counsel for Defendants Primero Reorganized School District RE-2,
Board of Education of the Primero School District, and
William Naccarato*

Meredith McDonald, Esq.
Hall & Evans LLC
1001 17th Street, Suite 300
Denver, CO 80202
*Counsel for Defendant Sanchez*

Douglas B. Tumminello, Esq.
Caitlin C. McHugh, Esq.
Lewis Roca Rothberger Christie LLP
1200 17th Street, Suite 3000
Denver, CO 80202
*Counsel for Defendant D.L.*

Stanley Garnett, Esq.
Brownstein, Hyatt, Farber, Schreck, LLP
410 17th Street, Suite 2200
Denver, Colorado 80202
*Counsel for Defendant Z.L.*

*/s/ Veronica Guisse*
Veronica Guisse, Paralegal to
Andrew T. Miltenberg, Esq. and
Gabrielle M. Vinci, Esq.